UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LOMA LINDA UNIVERSITY,

                    Plaintiff,

   -v-


SMARTER ALLOYS, INC.,

                    Defendant /Third-Party Plaintiff,

   -v-


RODRIGO VIECILLI,

                    Third-Party Defendant.

19-CV-607-LJV-MJR
REPORT AND RECOMMENDATION

This case has been referred to the undersigned for all pre-trial matters, including preparation of a report and recommendation on dispositive motions. (Dkt. No. 45). Before the Court is Plaintiff Loma Linda University's motion to dismiss the second and fourth amended counterclaims of Defendant Smarter Alloys, Inc., as well as Plaintiff's motion to strike Defendant's affirmative defense of fraud in the inducement and fraudulent concealment under Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, respectively. (Dkt. No. 50). Also before the Court is Third-Party Defendant Rodrigo Viecilli's motion to dismiss Defendant/Third-Party Plaintiff Smarter Alloys, Inc.'s amended third party complaint under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 51). For the following reasons, it is recommended that Loma Linda

University's motion to dismiss and motion to strike (Dkt. No. 50) be granted and Dr. Rodrigo Viecilli's motion to dismiss (Dkt. No. 51) be granted in part and denied in part.

## PROCEDURAL HISTORY

On May 10, 2019, Loma Linda University ("Plaintiff" or "Loma Linda") commenced this action against Smarter Alloys, Inc., alleging breach of contract, breach of the covenant of good faith and fair dealing, quiet title based on failure of consideration, and rescission based on mutual mistake. (Dkt. No. 1). On July 12, 2019, Defendant/Third-Party Plaintiff Smarter Alloys, Inc. ("Defendant' or "Smarter Alloys") filed an answer and counterclaim against Plaintiff and a third-party complaint against Dr. Rodrigo Viecilli ("Third-Party Defendant" or "Dr. Viecilli") for breach of contract, breach of covenant of fair dealing and good faith, declaratory judgment, and fraudulent concealment. (Dkt. No. 25).

On September 10, 2019, Third-Party Defendant Dr. Viecilli filed a motion to dismiss the third-party complaint (Dkt. No. 43), and Plaintiff Loma Linda filed a motion to dismiss Defendant Smarter Alloys' second, third, and fourth counterclaims (Dkt. No. 44). On October 1, 2019, Smarter Alloys filed an amended answer with counterclaims and third-party complaint reasserting its counterclaims and third-party complaint allegations. (Dkt. No. 46). Loma Linda and Dr. Viecilli withdrew their motions to dismiss in light of Smarter Alloy's amended filing. (Dkt. No. 49).

On October 23, 2019, Loma Linda and Dr. Viecilli filed the instant motions to dismiss. (Dkt. Nos. 50, 51). Loma Linda now moves to dismiss Smarter Alloys' second and fourth amended counterclaims and to strike an affirmative defense under Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure. (Dkt. No. 50). Dr. Viecilli moves to dismiss Smarter Alloys' amended third party complaint under Rules 12(b)(2) and

12(b)(6) of the Federal Rules of Civil Procedure.[1] (Dkt. No. 51). Smarter Alloys filed a memorandum in opposition to both motions to dismiss (Dkt. No. 52), to which Loma Linda and Dr. Viecilli filed a reply. (Dkt. No. 55).

This Court heard oral argument on the motions on December 2, 2019. (Dkt. Nos. 56, 57). At that time, the Court gave each party leave to submit supplemental briefing on the issues. On December 17, 2019, Loma Linda and Dr. Viecilli filed a letter in further support of their motions to dismiss (Dkt. No. 58), and Smarter Alloys filed a letter in further opposition to the motions. (Dkt. No. 59). On January 6, 2020, the parties simultaneously filed letter replies. (Dkt. Nos. 60, 61). At that time, the Court considered the matter submitted for decision.

## RELEVANT FACTS and BACKGROUND

### Complaint

This dispute arises from a contract between Loma Linda University, a not-for-profit university incorporated in the State of California, and Smarter Alloys, Inc., a for-profit Canadian corporation located in Ontario, Canada. (Dkt. No. 1, pgs. 1-2). In June 2015, the parties entered into a Consulting Agreement which governed research and scientific work in the fields of dentistry and orthodontia. (Dkt. Nos. 1-2; 27). The contract names Loma Linda University as the "Consultant," Smarter Alloys as the "Company," and Rodrigo Viecilli, DDS, Ph.D., as the "Principal Investigator." (Id.). It lists the following description of consulting services: "Company will fund research and development activities to be performed by Principal Investigator as a faculty member and employee of

---

[1] Third-Party Defendant Dr. Viecilli also joins Plaintiff's motion to dismiss Defendant's second and fourth counterclaims, which are coextensive with the third-party claims asserted against Dr. Viecilli. (Dkt. No. 51, pg. 6).

Consultant. The research and development activities will be directed to multi-force archwire prescriptions targeting specific classes of commonly observed malocclusions." (*Id.*).

In 2013, Dr. Rodrigo Viecilli became a faculty professor and research scientist at Loma Linda University engaged in work related to the application of finite element analysis (FEA) to orthodontics. (Dkt. 1, pgs. 2-5). This work aimed to develop new technology for the design of archwires that attach to brackets in traditional orthodontic braces. (*Id.*). Orthodontists previously used "three-zone" archwires with differing stiffness to provide varying force on connective tissue, known as the periodontal ligament, which anchors teeth to the jaw and skull. (*Id.*). Greater force is required to move bigger teeth, thus variable force in preferred. (*Id.*). Dr. Viecilli used FEA to calculate the ideal force to be exerted on the periodontal ligament to correct malocclusions of each tooth, a comprehensive calculation not previously performed. (*Id.*). In 2015, Dr. Viecilli collaborated with Dr. Charles Burstone, an orthodontist and professor, to publish their findings about this new methodology to calculate the "ideal load proportion" for 14 different tooth structures. (*Id.*) They also concluded that "no currently available orthodontic application, as a simple combination of archwire and bracket, can achieve the ideal load proportions between teeth during alignment." (*Id.*). Based on this, Drs. Viecilli and Burstone began development of an orthodontic archwire having different segments with varying stiffness that could deliver idealized force loads to individual teeth. (*Id.*).

Smarter Alloys sought to develop and market such new orthodontic technology for commercial use. In March 2015, Dr. Viecilli, Loma Linda, and Smarter Alloys signed a Memorandum of Understanding (MOU) detailing a Statement of Work through which

Smarter Alloys would fund research and development activities for orthodontic multi-force archwires targeting specific classes of common malocclusions. (Dkt. No. 1, pg. 5). The work was to be performed by Dr. Viecilli in his capacity as a faculty member and employee of Loma Linda. (*Id.*). The terms of the MOU were expressly non-binding. (*Id.*). Both the MOU and Consulting Agreement were exhibited and incorporated by reference into the Complaint. (*Id.*).

On June 5, 2015, Dr. Viecilli and Loma Linda entered into the Consulting Agreement, under which Dr. Viecilli and Loma Linda agreed to conduct research and consult with Smarter Alloys in exchange for financial compensation and future royalties. (*Id.*). The Consulting Agreement states that it is "by and between Smarter Alloys, Inc. […] ('Company') […] and Loma Linda University […] ("Consultant")." (Dkt. Nos. 1-2, 27). The contract was executed by Dr. Ibraheem Khan, as Chief Executive Office of Smarter Alloys, and Anthony J. Zuccarelli, Ph.D., as Associate Vice President for Research Affairs for Loma Linda University. (Dkt. Nos. 1, pg. 5; 1-2; 27). The contract accounts for Dr. Viecilli's involvement in the agreement by naming him as the "Principal Investigator" in his capacity as a faculty member and employee of Loma Linda. Dr. Viecilli executed the contract under an "Acknowledgment by Principal Investigator." (*Id.*). The description of consulting services outlines that Smarter Alloys agreed to fund research and development activities to be performed by Dr. Viecilli directed to multi-force archwires prescriptions targeting specific classes of commonly observed malocclusions. (*Id.* at 6). The contract also describes a "Research Plan" providing that Dr. Viecilli will use FEA to "explore changes in stiffness of NiTi [nickel titanium alloy] [arch]wires for various malocclusion situations and resulting effects of forces," and research the impact of different interbracket

distances on three types of malocclusions, "impacted or high canines, rotated premolars, and tilted lateral incisors." (*Id.*)

The Consulting Agreement had a retroactive effective date of December 10, 2014 and a termination date of December 31, 2015. (*Id.*). Section IV.A. of the agreement provided that intellectual property "created, authored, or conceived between the Effective Date and the termination date of [the] Agreement shall be the sole property of [Smarter Alloys]." (*Id.* at pgs. 5-6). The contract distinguishes that "[t]he parties grant no right, title, interest, or license to the other party in [intellectual property] existing prior to the Effective Date of this Agreement." (*Id.*). Under the agreement, Smarter Alloys also agreed to pay a royalty earned on the sale of any "product," or alternatively pay an upfront milestone payment to eliminate the royalty provision, if Smarter Alloys commercialized a "product." (*Id.* at 6-7). A "product" is defined as an archwire that uses force prescriptions targeting the three malocclusions set out in the research plan. (*Id.*)

Section VIII.D of the Consulting Agreement contained a forum selection clause providing that, "exclusive jurisdiction for any legal proceeding regarding this Agreement shall be in the U.S. District Court for the Western District of New York, and the parties expressly agree that jurisdiction and venue are proper in this Court." (*Id.*).

On April 6, 2015, Loma Linda filed a U.S. Provisional Patent Application Number 62/143,727 (the "'727 provisional application"), directed to "Systems and Methods for Designing Orthodontic Archwires for Malocclusions," and listing Dr. Viecilli and Dr. Burstone as co-inventors. (*Id.* at 7). The '727 provisional application was based on research by Dr. Viecilli and Dr. Burstone in 2013 relating to calculation of load proportion numbers for various tooth structures. (*Id.*). Loma Linda asserts that the invention

disclosed in the '727 provisional application was conceived prior to the effective date of the agreement. (*Id.*). Also on April 6, 2015, Dr. Viecilli signed and filed with the U.S. Patent and Trademark Office an assignment of all rights in the '727 provisional application to Loma Linda University. (*Id.*). In August 2015, Dr. Viecilli and Loma Linda assigned the '727 provisional application to Smarter Alloys effective April 6, 2015. (*Id.* at 8). Loma Linda asserts that Smarter Alloys did not record the '727 assignment with the Patent Office as required for perfection of title under the Section 261 of the Patent Act. (*Id.*).

On May 18, 2015, Loma Linda filed a U.S. Provisional Patent Application Number 62/163,338 (the "'338 provisional application"), directed to "Systems and Methods for Designing Orthodontic Archwires for Malocclusions," and listing Dr. Viecilli and Dr. Burstone as co-inventors. (*Id.* at 7-8). The '338 provisional application was also based on research by Dr. Viecilli and Dr. Burstone in 2013 relating to calculation of load proportion numbers for various tooth structures. (*Id.*). Loma Linda asserts that the invention disclosed in the '338 provision application was conceived prior to the effective date of the agreement. (*Id.*). On May 22, 2015, Dr. Viecilli signed and filed with the U.S. Patent and Trademark Office an assignment of all rights in the '338 provisional application to Loma Linda University. (*Id.*). In March 2016, Dr. Viecilli and Loma Linda assigned the '338 provisional application to Smarter Alloys effective May 18, 2015. (*Id.*). Loma Linda asserts that Smarter Alloys also failed to record the '338 assignment with the Patent Office. (*Id.*)

On April 5, 2016, Smarter Alloys filed U.S. Non-Provisional Patent Application Number 15/091,204 (the "'204 non-provisional application"), titled "Systems and Methods for Designing Orthodontic Archwires for Malocclusions." (*Id.*). Loma Linda asserts that Smarter Alloys wrongfully listed Dr. Viecilli and Dr. Khan as co-inventors, listed itself as

the applicant, and failed to list Dr. Burstone as an inventor. (*Id.*). This non-provisional application claimed priority to both the '727 and '338 provision application and is currently pending. (*Id.* at 8-9). Loma Linda asserts that the '204 non-provisional application did not seek an inventor's declaration from Dr. Viecilli and was filed without Dr. Viecilli or Loma Linda's permission or knowledge. (*Id.* at 9). It further alleges that Dr. Khan is not the proper inventor of the subject matter of this application. (*Id.*).

On April 25, 2016, Smarter Alloys filed U.S. Provisional Patent Application Number 62/327,044 (the "'044 provisional application," titled Introduction to the Technological and Clinical Benefits of SmartArch," listing only Dr. Khan as the inventor. (*Id.*). The '044 provisional application has since expired. Loma Linda alleges that the specification of the '044 application is a "white paper" of the same title, and includes data, text, and graphics created, authored, and originated by Dr. Viecilli, but Smarter Alloys failed to list Dr. Viecilli as the inventor on the application. (*Id.*). The '044 provisional application directly referenced and gave credit to Dr. Viecilli and Dr. Burstone as originators of the research and data behind SmartArch. (*Id.*). Loma Linda alleges that this application was filed without Dr. Viecilli or Loma Linda's permission or knowledge, and that Dr. Khan is not the proper inventor of the subject matter of this application. (*Id.*).

On April 25, 2017, Smarter Alloys filed a U.S. Non-Provisional Patent Application Number 15/496,085 (the "'085 non-provisional application"), directed to "Systems and Methods for Designing Orthodontic Archwires for Malocclusions." (*Id.* at 10). Loma Linda asserts that Smarter Alloys wrongfully listed Dr. Viecilli and Dr. Khan as co-inventors, listed itself as the applicant, and failed to list Dr. Burstone as an inventor. (*Id.*). Loma Linda asserts that the '085 non-provisional application did not seek an inventor's

declaration from Dr. Viecilli and was filed without Dr. Viecilli or Loma Linda's permission or knowledge. (*Id.*). It further alleges that Dr. Khan is not the proper inventor of the subject matter of this application. (*Id.*). The '085 non-provisional application, which is currently pending, purports to be a continuation-in-part of the '204 non-provisional application and claims priority to each of the '727 provision application, the '338 provisional application, and the '044 provisional application. (*Id.*).

Loma Linda alleges that Smarter Alloys has wrongfully and knowingly failed to compensate Loma Linda pursuant to the terms of the Consulting Agreement, while simultaneously relying on Dr. Viecilli's name and reputation to promote sales of the SmartArch product. (*Id.* at 12).

Loma Linda brings its first cause of action for breach of contract based on the allegation that Smarter Alloy's SmartArch product constitutes a "Product" covered by the Consulting Agreement for which Smarter Alloys has failed to pay Loma Linda either royalty fees or a one-time buyout as defined in the agreement. (*Id.*). In the event that the sale of SmartArch by third parties is not considered to be sale of products described in the agreement, Loma Linda asserts, as its second cause of action, that Smarter Alloys has breached the covenant of good faith and fair dealing. (*Id.* at 13). It alleges that if Smarter Alloys could commercialize SmartArch through an intermediary, in order to avoid paying royalties under the contract, such an action would deprive Loma Linda of the benefit of the bargain. (*Id.*). Loma Linda's third cause of action seeks to quiet title to its previous interests in certain inventions based on failure of consideration. (*Id.* at 14-15). It alleges that its assignments of the '338 and '727 provisional applications to Smarter Alloys were not supported by "good and valuable consideration" because they related to

inventions conceived of before the effective date of the Consulting Agreement and such an assignment was therefore not required under the contract. (*Id.*). As its fourth cause of action, Loma Linda seeks rescission of the '338 and '727 provisional application assignments based on mutual mistake regarding Loma Linda's obligation to provide such assignments under the Consulting Agreement because those inventions were conceived before the effective date of the agreement. (*Id.* at 16).

*Counterclaims and Third-Party Complaint*

The following facts alleged in Smarter Alloys' Amended Answer with Counterclaims and Third-Party Complaint (Dkt. No. 46) are assumed to be true for purposes of this motion to dismiss.

Smarter Alloys alleges that, prior to 2010, Dr. Ibraheem Khan performed research into ways of adjusting the properties, including stiffness or flexibility, of shape memory materials, such as NiTi alloys, and conceived that this would have application to orthodontic appliances. (Dkt. No. 46, pg. 25). Some of this research is described in U.S. Patent No. 9,186,853 issued on November 17, 2015, based on provisional and non-provisional applications filed in 2009 and 2010, for which Dr. Khan is a co-inventor. (*Id.*). Smarter Alloys is the assignee of said patent. (*Id.*). This research into "Multiple Memory Metal Technology" ("MMMT") and its application to various medical devices, including braces, was discussed in a press release issued by the University of Waterloo on September 1, 2010. (*Id.*). In December 2011, Ormco Corporation, an orthodontics supply company, and a startup company formed by Dr. Khan, now known as Smarter Alloys, entered into a consulting services agreement focused on commercializing MMMT technology and evaluating its orthodontic and dental product applications, including use

of the technology to produce orthodontic archwires applying different unloading stresses within a single archwire. (*Id.* at 9, 26). Ormco paid Smarter Alloys for exclusive rights to develop and market its this technology. (*Id.* at 26).

Ormco then sought to engage Dr. Charles Burstone related to orthodontic prescriptions, and Dr. Burstone wanted to include Dr. Viecilli in this work. (*Id.*). On December 15, 2012, Ormco and Dr. Viecilli entered into a consulting services agreement based on a development of a "Variable Force Archwire" utilizing finite element analysis method. (*Id.* at 27). That collaboration resulted in an invention disclosure dated August 13, 2013, in which Dr. Viecilli and Dr. Burstone assigned any rights they had in the invention to Ormco. (*Id.*). The invention was summarized as "a mathematical method to promote better equalization of periodontal ligament stresses and/or strains" (referred to as a "Stress Equalizing Arch" or "SEAr" archwire) and included an algorithm to produce customized orthodontic archwires based on this. (*Id.*).

In 2014, after Ormco expressed decreased interest in this development work, Smarter Alloys approached Dr. Burstone and Dr. Viecilli about continuation of the work. (*Id.* at 28). In late 2014, Smarter Alloys and Dr. Burstone and Dr. Viecilli began negotiating terms for a consulting agreement. (*Id.*). Smarter Alloys alleges that Dr. Viecilli did not want Loma Linda University included in the agreement and intended to conceal from Loma Linda the consulting fees he would receive. (*Id.*). Smarter Alloys informed Loma Linda that such an agreement was being negotiated and Loma Linda then became involved. (*Id.*). Dr. Burstone died in February 2015. (*Id.*).

Smarter Alloys alleges that "Loma Linda, Dr. Viecilli, and Smarter Alloys entered into [the subject] Consulting Agreement." (*Id.* at 29). In the alternative, it submits that

Loma Linda and Smarter Alloys entered into said agreement. (*Id.*). It alleges that Dr. Viecilli is both an agent of Loma Linda University and a party to the contract based on that fact that he participated in the negotiation of the contract and its terms, assumed obligations to perform under that contract, and received payment directly from Smarter Alloys pursuant to that contract. (*Id.* at 24).

Smarter Alloys alleges facts related to the context and terms of the June 2015 Consulting Agreement substantially in agreement with those contained in Loma Linda's complaint. However, it submits that it made all payments to Loma Linda and Dr. Viecilli as required under the agreement (*id.* at 29, 31), and disputes Loma Linda's claims that certain intellectual property was wrongfully assigned to Smarter Alloys, (id. at 39-42). It further asserts that Loma Linda and Dr. Viecilli failed to the perform under the contract. (*Id.* at 36-37). Lastly, it alleges that Loma Linda and Dr. Viecilli fraudulently concealed material facts under the contract relating to when Dr. Viecilli conceived of intellectual property and inventions. (*Id.* at 42-46).

Supporting its claim of breach of contract, Smarter Alloys states that the contract identified "Deliverables" that Loma Linda and Dr. Viecilli failed to deliver, including a keynote address to be given by Dr. Viecilli at the annual meeting of the American Association of Orthodontists held in May 2015 and specified scientific publications. (*Id.* at 29-30; 36-37). Smarter Alloys claims that although Dr. Viecilli gave a presentation at the association's annual meeting, it was not the keynote address. (*Id.*). Further, it asserts that Dr. Viecilli failed to produce three publications required under the agreement.[2] (*Id.* at 30-31).

---

[2] These publications are described in Exhibit A of the Consulting Agreement and are entitled, "a. Determination of Resistance (Anchorage) numbers for teeth," "b. Effects of interbracket distance, friction

In its second cause of action, Smarter Alloys states that Loma Linda and Dr. Viecilli breached the covenant of good faith and fair dealing by their failure to timely author the publications listed as "Deliverables" under the contract and by delaying or interfering with the publication of another paper. (*Id.* at 38-39). It alleges that, if not a breach of the express terms of the contract, Loma Linda and Dr. Viecilli deprived Smarter Alloys of the benefit of the bargain by refusing to author or delaying publication of required papers. (*Id.*). Smarter Alloys alleges that, in 2016, Dr. Viecilli wrote a paper relating to work done pursuant to the parties' Consulting Agreement. (*Id.* at 35). It states that a draft of that paper was submitted for publication but rejected because it was not of publishable quality. (*Id.*). Dr. Michael Kuntz, an employee of Smarter Alloys, substantially rewrote the paper. The re-written paper (the "2019 Paper") listed Dr. Kuntz, Dr. Viecilli, Dr. Burstone, Dr. Khan, and other Smarter Alloys' employees as authors. (*Id.*). The 2019 Paper was accepted for publication and scheduled to be published in May 2019, coinciding with Ormco's launch of SmartArch products. (*Id.*). Smarter Alloys alleges that Dr. Viecilli interfered with the schedule publication of this paper by contacting the publisher and withdrawing his permission for publication, causing it not to be published. (*Id.* at 35-36). It is alleged that Dr. Viecilli did so at the direction of Loma Linda to exercise leverage and pressure Smarter Alloys into paying additional amounts to him or Loma Linda, or otherwise interfere with the SmartArch product launch. (*Id.*).

As its third cause of action, Smarter Alloys seeks declaratory relief regarding the non-payment of royalties and ownership of the provisional patent applications. (*Id.* at 39-

---

coefficient, and wire diameter in a three bracket alignment scenario with NiTi wires", and "c. Report summarizing experimental results and force prescriptions for the three malocclusion scenarios set out in Section 5 of the Research Plan." (Dkt. No. 46 at 30-31).

42). It does not dispute that the Consulting Agreement provided for payment of royalties from the commercialization of products but submits that the agreement covered only archwire products that use force prescriptions to target three specific types of malocclusions, i.e. impacted or high canine, rotated molars, and tilted lateral incisors. (*Id.* at 39-40). It contends that SmartArch products do not use force prescriptions targeting these three malocclusions. (*Id.* at 40). It also states that Smarter Alloys has not yet earned gross profits on the sale of SmartArch products that would obligate it to make royalty payments under the agreement. (*Id.*). Further, it asserts that it is no longer obligated to perform under the contract based on Loma Linda and Dr. Viecilli's material breaches of the agreement. (*Id.*).

Smarter Alloys also claims that any intellectual property contained in the '727 and '338 provisional patent applications was correctly assigned to it. (*Id.* at 32-34). It alleges that Dr. Viecilli and Loma Linda acknowledged receipt of a consideration when they assigned their rights in the '727 provisional application and '338 provisional application to Smarter Alloys in August 2015 and March 2016, respectively. (*Id.*). Further, Smarter Alloys states that both applications were written during the term of the Consulting Agreement and include information relating to consulting services within the scope of the parties' Consulting Agreement. (*Id.*). The '338 application was filed to capture information not captured in the '727 because it was developed more recently. (*Id.*). To the extent that any intellectual property in these patent applications was not correctly assigned to Smarter Alloys, Smarter Alloys alleges that Dr. Viecilli may have derived at least some of the information from discussions with Smarter Alloys or Ormco personnel and may have already assigned all rights to Ormco. (*Id.*). Therefore, it alleges that Loma Linda has no

rights to any intellectual property in the '727 or '338 applications because Dr. Viecilli already assigned such rights to either Smarter Alloys or Ormco. (*Id.*).

As its fourth and final cause of action, Smarter Alloys alleges fraudulent concealment by Loma Linda and Dr. Viecilli regarding what intellectual property was covered under the terms of the agreement and what was created, authored, or conceived prior to it. (*Id.* at 42-46). Based on the allegations in plaintiff's complaint, Smarter Alloys infers that Loma Linda and Dr. Viecilli knew that certain intellectual property pre-existed the effective date of the agreement and would not belong to Smarter Alloys, contrary to the terms of the agreement. (*Id.* at 44). Smarter Alloys states that it reasonably relied on Loma Linda and Dr. Viecilli's representations that Dr. Viecilli would undertake research into changes in stiffness of NiTi wires and the resulting effects on forces, and that intellectual property relating to Loma Linda and Dr. Viecilli's services would belong to Smarter Alloys. (*Id.*). Had they known that said intellectual property would later be claimed to have been created, authored, or conceived prior to the contract and thus would not belong to Smarter Alloys, Smarter Alloys submits that it would not have entered into the Consulting Agreement. (*Id.*). Smarter Alloys further asserts that, prior to entering into the contract, it exercised ordinary intelligence and researched patents and background intellectual property to determine whether Dr. Viecilli had already created such work. (*Id.* at 45). Because it found nothing to suggest Dr. Viecilli had already created this specific work, Smarter Alloys alleges that it was particularly within the knowledge of Loma Linda and Dr. Viecilli whether he had done so, and Smarter Alloys lacked other reasonable means to learn this. (*Id.*). Thus, Smarter Alloys asserts that Loma Linda and Dr. Viecilli

had superior knowledge and a duty to disclose such material facts. (*Id.* at 46). It asserts that this conduct and misrepresentation constitutes fraudulent concealment. (*Id.*).

## DISCUSSION

The Court will first address Loma Linda's motion to dismiss Smarter Alloys' amended counterclaims and strike affirmative defense, before discussing Dr. Viecilli's motion to dismiss the third-party complaint against him.

### I.    Motion to Dismiss Amended Counterclaims

Loma Linda University brings a motion to dismiss Smarter Alloys second and fourth amended counterclaims. (Dkt. No. 50). As its second counterclaim, Smarter Alloys alleges that Loma Linda and Dr. Viecilli breached the covenant of good faith and fair dealing in their failure to timely author certain deliverables listed in the Consulting Agreement and/or by interfering with the publication of another paper known as the "2019 Paper." (Dkt. No. 46, ¶¶ 117-127). As its fourth counterclaim, Smarter Alloys alleges that Loma Linda and Dr. Viecilli fraudulently concealed material facts when entering into the parties' Consulting Agreement. (*Id.*, ¶¶ 155-179).

Loma Linda moves to dismiss these counterclaims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim under the pleading standards of Fed. R. Civ. P. 8(a). (Dkt. No. 51). As to the fourth counterclaim for fraudulent concealment, Loma Linda also moves to dismiss for failure to meet the heightened pleading standard applicable to fraud allegations under Fed. R. Civ. P. 9(b). (*Id.*)

### a.    Rule 12(b)(6) Pleading Standard

A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim on which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6). In order

to state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). In reviewing a complaint in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[]the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for relief...requires the...court to draw on its judicial experience and common sense...[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Bell Atl. Corp.*, 550 U.S. at 679.

> b. Breach of the Covenant of Good Faith and Fair Dealing

Loma Linda and Dr. Viecilli assert that Smarter Alloys counterclaim for breach of the implied covenant of good faith and fair dealing fails to meet the pleading requirements and must be dismissed. (Dkt. No. 50, pgs. 14-19). Smarter Alloys counters that it has properly stated a claim for relief. (Dkt. No. 52, pgs. 14-20).

Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract. *Harris*

v. *Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002). New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled. *Cruz v. Fxdirectdealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (quoting *Harris*, 310 F.3d at 81). Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant. *Cruz*, 720 F.3d at 125 (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 434 n. 17 (2d Cir. 2011)). "To state a cause of action for breach of the implied covenant of good faith and fair dealing, the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." *House of Diamonds v. Borgioni*, 737 F. Supp. 2d 162, 170 (S.D.N.Y. 2010) (citation omitted). "In assessing the existence of an implied covenant, '[t]he boundaries set by the duty of good faith are generally defined by the parties' intent and reasonable expectations in entering the contract.'" *Dorset Indust. v. United Grocers, Inc.*, 893 F. Supp. 2d 395, 406 (E.D.N.Y. 2012) (quoting *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F.2d 497, 502 (2d Cir. 1989)).

Smarter Alloys' allegations that Loma Linda and Dr. Viecilli breached this implied covenant by failing to timely produce the three publications listed in the Consulting Agreement are reliant on the same facts underpinning its breach of contract claims. Even if there was bad faith on the part of Loma Linda or Dr. Viecilli in refusing to author or delaying publication of these papers, the claim is duplicative of the breach of contract claim and does not provide an independent basis for recovery. *See SymQuest Grp., Inc. v. Canon U.S.A.*, 186 F. Supp. 3d 257, 265-66 (E.D.N.Y. 2016); *see also Pangaea H.K.*

*v. Imaging*, 2016 U.S. Dist. LEXIS 199579, *12-13 (W.D.N.Y. 2016). To the extent this claim rests on the same alleged facts and allegations supporting the breach of contract claim, it cannot survive.

In addition, Smarter Alloys asserts that its counterclaim for breach of the covenant of good faith and fair dealing is appropriately pled as an alternative to its breach of contract counterclaim under Fed. R. Civ. P. 8(d)(2). This is inaccurate because New York law is clear that claims for breach of contract and breach of the implied covenant are duplicative and cannot be pled in the alternative when based on the same predicate facts. *See Halper v. Tharaldson*, 2016 U.S. Dist. LEXIS 92985, *15 (D. Nev. July 18, 2016) (citing *Boart Longyear Ltd. v. Alliance Indust., Inc.*, 869 F. Supp. 2d 407, 420 (S.D.N.Y. 2012); *see also Spread Enters. v. First Data Merch. Servs. Corp.*, 2012 U.S. Dist. LEXIS 119080, *13 (E.D.N.Y. Aug. 22, 2012) ("While in most cases a plaintiff may plead even inconsistent claims pursuant to Fed. R. Civ. P. 8(d), in the context of a claim for breach of the covenant of good faith and fair dealing, claims are not in the alternative when they are based on the exact same allegations.") (internal quotations omitted).

Smarter Alloys also points to Dr. Viecilli's alleged interference with and disruption of the scheduled publication of the 2019 Paper as a breach of the implied covenant. Smarter Alloys argues that this claim is adequately pled because it is based on factual allegations of conduct not expressly forbidden under the contract, but nonetheless constituted an effort to deprive Smarter Alloys of the benefit of the bargain by impairing its ability to market SmartArch. Assuming, *arguendo*, that the 2019 Paper is separate from the deliverables identified by the contract,[3] Smarter Alloys has not demonstrated that Dr.

---

[3] Smarter Alloys asserts that whether the 2019 Paper was one required by the Consulting Agreement is a disputed question of fact not fit for determination in a motion to dismiss. The Court does not need to

Viecilli's unwillingness to allow publication in his name of a substantially rewritten paper impairs a benefit of this bargain. In order for this alleged interference with 2019 Paper publication to constitute a breach of the implied covenant, the parties must have anticipated that the agreement imposed an obligation on Dr. Viecilli and Loma Linda to assist with marketing or promotional activities for products related to their research. Such an obligation is simply not shown in the pleadings. Although potential commercialization of archwire products was anticipated under the contract, Dr. Viecilli and Loma Linda's responsibilities were to perform research and development activities and to produce specific deliverables, not to aid generally in marketing efforts. "While the implied covenant may be used 'to protect a legitimate, mutually-contemplated benefit' of the contract, a party may not invoke this covenant 'to have [the] Court create an additional benefit for which [the parties] did not bargain,' or to impose obligations that would be inconsistent with the express contractual provisions." *Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F. Supp. 2d 233, 250 (S.D.N.Y. 2002) (internal quotations and citations omitted) (alterations in original). Smarter Alloys has not shown that it was mutually contemplated or reasonably expected by the parties that Dr. Viecilli would lend his endorsement to other publications, or that any marketing obligations were imposed on Loma Linda and Dr. Viecilli. Smarter Alloys' reliance on *Konecranes, Inc. v. Cranetech* and *Technest Holding, Inc. v. Deer Creek Fund LLC* is unconvincing. *See* 2005 U.S. Dist. LEXIS 3887 (W.D.N.Y. Feb. 2, 2005); 2008 U.S. Dist. LEXIS 61560 (S.D.N.Y. Aug. 12, 2008). In *Konecranes*, the Court found a "material difference" between the allegations supporting the breach of

---

resolve this question because this counterclaim must be dismissed under either conclusion. If the 2019 Paper was part of the express deliverables listed in the contract, then it is duplicative of the breach of contract claim. In the event it was not explicitly required under the contract, the following analysis is applicable.

contract claim (alleging improper disclosure of confidential information) and the breach of the implied covenant claim (alleging improper misappropriation of confidential information) that is not present here. *See* 2005 U.S. Dist. LEXIS 3887 at *8-9. *Technest* is a more apt comparison but is distinguishable because there defendant's reliance on the specific good faith conduct at issue was reasonable based on contractual expectations. *See* 2008 U.S. Dist. LEXIS 61560 at *47-48. By contrast, Smarter Alloys did not have a similarly reasonable implied expectation about Dr. Viecilli and Loma Linda's role in marketing activities under the contract. In *Technest*, the plaintiff company made efforts to frustrate defendant's intended sale of Technest company stock shares which were obtained by defendant through a securities' purchase agreement and registration rights agreement. *See* 2008 U.S. Dist. LEXIS 61560 at *4-10. Technest purposefully failed to obtain a registration statement (as was required by a date certain under the agreement) that would provide early waiver of sale volume limitations. *See* 2008 U.S. Dist. LEXIS 61560 at *4-10, 30-31. Instead, it falsely represented that volume restrictions still applied under securities law. *See* 2008 U.S. Dist. LEXIS 61560 at *4-10, 30-31. The Court concluded that it was reasonable for defendant to expect that the provisions of the agreement limiting sales of stock pursuant to a registration statement would not apply where Technest had failed to obtain such a statement and the volume sales defendant wished to make were now in compliance with securities law based on its length of holding. *See* 2008 U.S. Dist. LEXIS 61560 at *46-47. If there is any similar "either/or" scenario present in the instant case, it would be that Smarter Alloys was free to market its products without use of Dr. Viecilli's name or to rely on the publications and presentation work he was bound to produce under the Consulting Agreement. Dr. Viecilli

and Loma Linda did not have an implied responsibility to market products or assist with publications outside those express deliverables. Their alleged failure to timely or adequately produce express deliverables has a remedy in breach of contract but it does not impose additional obligations upon them.

Smarter Alloys has not plausibly alleged any other way that Loma Linda or Dr. Viecilli sought to prevent performance of the contract or to withhold its benefits from Smarter Alloys. Thus, the Court concludes that Smarter Alloys' second counterclaim fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

### c. Fraudulent Concealment

Smarter Alloys' fourth counterclaim against Loma Linda and Dr. Viecilli is based on fraudulent concealment. At this time, Loma Linda and Dr. Viecilli move to dismiss the claim for failing to sufficiently allege the basic pleading requirements of Rule 8(a) and for falling short of the heightened pleading standards of Rule 9(b). Loma Linda also requests that the Court strike Smarter Alloy's affirmative defense based on fraud in the inducement and fraudulent concealment under Rule 12(f) for the same reasons it articulates for requesting dismissal of the counterclaim.

Under New York law, the five elements of a fraud claim must be shown by clear and convincing evidence: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff. *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). A common law fraud pleading is also subject to Rule 9(b) which states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "That ordinarily requires a

- 22 -

complaint alleging fraud to (1) specify the statements [or omissions] that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements [or omissions] were made, (4) explain why the statements [or omissions] were fraudulent." *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.,* 865 F. 3d 71, 81 (2d Cir. 2017) (citations and internal quotations omitted). Rule 9(b) also provides that "[m]alice, intent, knowledge, and other conditions of the person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Though, this leeway is not a "license to base claims of fraud on speculation and conclusory allegations." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004) (citation omitted). "Plaintiffs must allege facts that give rise to a strong inference of fraudulent intent," which may be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*, 375 F.3d at 187 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). "'[T]he adequacy of particularized allegations under Rule 9(b) is...case- and context- specific.'" *Chorches*, 865 F.3d at 81–82 (quoting *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 236 (2d Cir. 2015)). "'Despite the generally rigid requirement [of Rule 9(b)], allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *Chorches*, 865 F.3d at 81–82. Rule 9(b) is intended to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit. *Acito v. IMCERA Group*, 47 F.3d 47, 52

(2d Cir. 1995) (citing *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1990)).

Further, to state a claim for relief based on fraudulent concealment, Smarter Alloys must plausibly allege that Loma Linda and Dr. Viecilli had a duty to disclose. *See Sauer v. Xerox Corp.*, 938 F. Supp. 155, 159-60 (W.D.N.Y. 1996) (quoting *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995) ("An additional element is required to state a claim based on fraudulent concealment -- a duty to disclose."). A duty to disclose arises where: "(1) one party has superior knowledge of certain information; (2) that information is not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *Id.*, 938 F. Supp. at 160 (citing *Banque Arabe*, 57 F.3d at 155).

For the following reasons, the Court concludes that Smarter Alloys has not met its burden under the basic pleading standard of Rule 8(a), nor the particularity requirement of Rule 9(b). Applying the above principles to the instant case, the Court finds that Smarter Alloys has failed to allege facts to support a claim of fraudulent concealment. In particular, it has not plausibly alleged that Loma Linda and Dr. Viecilli had a duty to disclose relevant information. Smarter Alloys has also failed to plausibly allege that Loma Linda or Dr. Viecilli acted with fraudulent intent in making the agreement.

Smarter Alloys' factual basis for its counterclaim is rooted in the allegations contained in Loma Linda's own complaint, which alleges that the Consulting Agreement did not require assignment of the '338 and '727 provisional applications to Smarter Alloys because those inventions were conceived by Dr. Viecilli before the effective date of the agreement. Loma Linda seeks to quiet title of its previous interest in these patent

applications for lack of consideration or, in the alternative, rescission of each assignment based on mutual mistake. Taking Loma Linda's allegations as true, Smarter Alloys infers that fraudulent concealment must have occurred by omission of facts relative to the extent of Dr. Viecilli's research at a crucial point in time. It alleges that Dr. Viecilli and Loma Linda failed to disclose and fraudulently concealed that, prior to the effective date of the contract, Dr. Viecilli had already created, authored, or conceived intellectual property relating to the changes in stiffness of NiTi wires for the three subject malocclusions and the resulting effects on forces as described in the contract.

Smarter Alloys' claim that the opposing parties had superior information not readily available to it is belied by the fact that both parties knew prior research had been performed by Dr. Viecilli into this area. Smarter Alloys' pleadings demonstrate that the parties' agreement was made to allow Dr. Viecilli to continue research into the applications of multiple memory material technology in orthodontic appliances. The Consulting Agreement reflected that no right, title, interest, or license would be granted to Smarter Alloys for intellectual property conceived prior to the effective date. Smarter Alloys knew of pre-existing, related intellectual property, but expressly contracted to exclude such work. Armed with that knowledge, the status and extent of Dr. Viecilli's research can only be considered to have been readily available to Smarter Alloys during negotiations. *See Sauer*, 938 F. Supp. at 160.

Moreover, Smarter Alloys has not plausibly alleged that Loma Linda and Dr. Viecilli knew Smarter Alloys acted on mistaken knowledge. *See Sauer*, 938 F. Supp. at 160. As explained further with regard to fraudulent intent, Smarter Alloys fails to demonstrate that

Loma Linda or Dr. Viecilli knew that any mistaken knowledge existed during the contracting process.

Smarter Alloys' suggestions of fraudulent intent are too vague to satisfy the Rule 9(b) pleading standard. Rule 9(b) allows intent to be alleged generally but requires the claimant to allege a factual basis giving rise to a "strong inference of fraudulent intent." *See Eternity Global*, 375 F.3d at 187; *O'Brien*, 936 F.2d at 676. Although Smarter Alloys alleges that Loma Linda and Dr. Viecilli intended to retain ownership of this intellectual property and were motivated by their desire to profit from it, the facts pled do not support an inference of fraudulent intent. Smarter Alloys does not allege that Dr. Viecilli and Loma Linda knew at the time of negotiating the contract that Dr. Viecilli owned intellectual property related to the specified research plan that was conceived prior to the effective date. In fact, it can be inferred that Loma Linda and Dr. Viecilli believed that the subject intellectual property would belong to Smarter Alloys, based on the undisputed fact that they assigned the provisional patents to Smarter Alloys in accordance with the contractual terms. Loma Linda's subsequent claims in this action that the prior assignments failed for lack of consideration or mutual mistake do not alone amount to a factual basis to conclude that there was intent to conceal intellectual property at the time of the contract. To succeed in such a claim, Smarter Alloys must put forth some further basis regarding intent to defraud, which it has here failed to do.[4]

Thus, the Court concludes that Smarter Alloys' fourth counterclaim fails to allege facts to state a plausible claim for relief. Based on this, the Court also finds it appropriate to strike Smarter Alloys' affirmative defense of fraud in the inducement and fraudulent

---

[4] In light of Smarter Alloys' insufficient pleading of both a duty to disclose and fraudulent intent, the Court does not find it necessary to reach the additional elements of a fraudulent concealment claim.

concealment under Fed. R. Civ. P. 12(f). *See GEOMC Co. v. Calmare Therapeutics, Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) ("We conclude that the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense, but with recognition that, as the Supreme Court explained in *Iqbal*, applying the plausibility standard to any pleading is a context-specific task.") (internal quotations omitted).

Accordingly, the Court recommends that the motion to dismiss be granted relevant to Smarter Alloys' second and fourth counterclaims against Loma Linda University and Dr. Rodrigo Viecilli. Further, the Court recommends that Loma Linda University's motion to strike Smarter Alloys' affirmative defense based on fraud in the inducement and fraudulent concealment be granted.

## II.    **Motion to Dismiss Third-Party Complaint**

Dr. Viecilli moves to dismiss Smarter Alloys' amended third-party complaint for lack of personal jurisdiction and failure to state a claim pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure. (Dkt. No. 51). The second and fourth claims brought against Dr. Viecilli should be dismissed for the reasons explained above. Analysis of personal jurisdiction over Dr. Viecilli for the remaining claims follows.

### a.    Rule 12(b)(2) Standard

"The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). "The nature of plaintiff's burden to demonstrate jurisdiction 'varies depending on the procedural posture of the litigation.'" *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 620 (S.D.N.Y.

2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). "Where, as here, no evidentiary hearing has been held, the plaintiff 'need make only *a prima facie* showing by its pleadings and affidavits that jurisdiction exists,'" *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 102 (S.D.N.Y. 2015) (internal quotation marks and citations omitted), and "[t]he facts gleaned from the pleadings and affidavits are to be construed in the light most favorable" to the plaintiff, *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 563 (S.D.N.Y. 2000). Here, Smarter Alloys relies on its amended answer with counterclaims and third-party complaint (Dkt. No. 46) to meet its *prima facie* burden. The parties' Consulting Agreement and prior Memorandum of Understanding were incorporated into the third-party complaint by reference.

### b. Consent to Personal Jurisdiction Through the Forum Selection Clause

The Consulting Agreement contained a forum selection clause providing that exclusive jurisdiction for any legal proceeding regarding the contract shall be in the District Court for the Western District of New York, and the parties expressly agreed that jurisdiction and venue are proper in this Court. On the surface, the Consulting Agreement was made between only two parties: Smarter Alloys, Inc. and Loma Linda University. The express terms of the Consulting Agreement state that is "by and between Smarter Alloys, Inc. [...] ('Company') [...] and Loma Linda University [...] ("Consultant")." It is notable, however, that the contract specifically accounts for Dr. Viecilli's involvement in the agreement by naming him as the "Principal Investigator" in his capacity as a "faculty member and employee" of Loma Linda. In fact, he signed the contract as an "Acknowledgment by Principal Investigator."

Smarter Alloys alleges that Dr. Viecilli is both an agent of Loma Linda and a party to the contract by virtue of his actions, obligations, and benefits received under it.[5] (Dkt. No. 46, pgs. 24-25). Smarter Alloys argues that, even if not viewed as a formal party to the contract, Dr. Viecilli is a "closely related" party who has thus consented to jurisdiction in the Western District of New York based on the forum selection clause in the contract. (Dkt. No. 52, pgs. 27-30). Dr. Viecilli contests this and submits that he is merely an employee of Loma Linda and not "closely related" under the applicable law. (Dkt. No. 55, pgs. 6-7). He also asserts that Smarter Alloys has failed to plead specific facts establishing that the clause was reasonably communicated to Dr. Viecilli or mandatory as applied to him. (*Id.*).

Parties can consent to personal jurisdiction through forum selection clauses in contractual agreements. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (citations omitted). Such clauses are presumptively enforceable where: (1) it was reasonably communicated to the party resisting enforcement; (2) it was mandatory; and (3) the claims and parties involved are subject to the forum selection clause. *See Phillips v. Audio Active, Ltd.,* 494 F.3d 378, 383 (2d Cir. 2007). This presumption is rebutted if it can be clearly shown that the enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching. *See Bense v. Interstate Battery System, Inc.*, 683 F.2d 718, 721 (2d Cir. 1982) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9-12 (1972). "If the forum selection clause is both valid and applicable, 'it is not necessary to analyze jurisdiction under New York's long-arm statute

---

[5] The Court does not find it necessary to reach Smarter Alloys' argument that Dr. Viecilli was acting as an agent on behalf of Loma Linda.

or federal constitutional requirements of due process.'" *Leviton Mfg. Co. v. Reeve*, 942 F. Supp. 2d 244, 255 (E.D.N.Y. 2013) (internal quotations omitted).

As an initial matter, the first two prongs of the enforceability test are met. Dr. Viecilli contests that the forum selection clause was reasonably communicated to him. Yet, Dr. Viecilli's signed acknowledgment of the contract supports a finding that he was aware of the contract terms, including the clearly stated jurisdictional clause. *See Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995) (holding that a forum selection clause in clear and ambiguous language is considered reasonably communicated). Second, the contract designates that "exclusive jurisdiction" over related legal proceedings will be in the Western District of New York. This language indicates that the clause was mandatory, not permissive. *See S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 708 (2d Cir. 2010) (quoting *Audio Active*, 494 F.3d at 386) ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language."). Additionally, there is no argument that the relevant claims are not subject to the forum selection clause, as they stem directly from the contract. The key issue arises in whether Dr. Viecilli is a party subject to this clause.

"It is well-established that 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.'" *Weingrad v. Telepathy, Inc.*, 2005 U.S. Dist. LEXIS 26952, *15 (Nov. 3, S.D.N.Y.) (*citing Int'l Private Satellite Partners, L.P. v. Lucky Cat, Ltd.*, 975 F. Supp. 483, 485-86 (W.D.N.Y. 1997) (internal quotation omitted)). The fact that a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause. *See Aguas Lenders Recovery Group LLC v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009)

(enforcing forum selection clause against a non-signatory successor in interest to a contract signatory). An entity that is not a party to a contract containing a forum selection clause may therefore be bound by the clause if the entity is "closely related" to the dispute such that it becomes "foreseeable" that it will be bound. *Satellite Partners*, 975 F. Supp. at 486 (citing *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)); *see also Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) ("[W]here the alleged conduct of the nonparties is closely related to the contractual relationship, 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.'")(internal citations omitted).

The Second Circuit has expressly held that a non-signatory to a contract containing a forum selection clause may enforce that clause *against* a signatory when the non-signatory is "closely related" to another signatory. *See Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) (emphasis added) (explaining that because the signatories to the contract have already assented to a forum selection clause and thus have agreed to litigate disputes relating to the contract in the chose forum, this holding comports with the legitimate expectations of the parties in their freely negotiated agreement). The factual circumstances presented here are the opposite situation, in which a signatory seeks to bind a non-party, who is not a successor-in-interest, to the contract clause. This is a circumstance which the Second Circuit has not squarely addressed. *See Magi*, 714 F.3d at 723 n. 10 (noting that the Court does not reach the question of when a signatory may enforce a forum selection clause against a non-signatory). Based on the holding of *Aguas Lenders*, which was reiterated in *Magi*, several district courts in this circuit have extended the holding to include enforcement of forum

selection clauses against non-signatories and non-parties. *See Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 336 (S.D.N.Y. 2018). This Court is inclined to follow that precedent here.

Smarter Alloy cites *LaRoss Partners v. Contact 911, Inc.*, and several other cases on this point, urging that the Court find Dr. Viecilli to be a "closely related" party subject to its jurisdiction based on the forum selection clause in a contract to which he was not an official party. *See, e.g. LaRoss Partners, LLC v. Contact 911, Inc.*, 874 F. Supp. 2d 147, 161 (E.D.N.Y. 2012); *Recurrent Capital Bridge Fund I, LLC v. Isr Sys. & Sensors Corp*, 875 F. Supp. 2d 297 (S.D.N.Y. 2012); *Firefly Equities, LLC v. Ultimate Combustion Co.*, 736 F. Supp. 2d 797, 800 (S.D.N.Y. 2010); *MGM Studios, Inc. v. Canal+ Distrib. S.A.S.*, 2010 U.S. Dist. LEXIS 12765, *15 (S.D.N.Y. Feb. 9, 2010).

In *LaRoss Partners*, the Court analyzed application of a forum selection clause against a non-signatory under theories of estoppel, assumption, and "closely related" doctrine. *See* 874 F. Supp. 2d at 154-61. It held that a close business relationship between a signatory and a non-signatory is an important factor in determining if it was foreseeable that the non-signatory would be bound as "closely related." *Id.* at 160-61. There, the non-signatory defendant corporation, "Family," was "intimately connection" with the corporate signatory defendant, "Contact." *Id.* The Court concluded that "Family seems to function as essentially a subsidiary of Contact" and was formed to prevent complaints about Family's product from affecting Contact's other products and business. *Id.* Based on this relationship, the Court ruled that it was foreseeable to Family that its role in the agreement and relationship to Contact would lead to it being bound by the forum selection clause. *Id.*

The Court acknowledges that *LaRoss* and several other cases relied on by Smarter Alloys, are distinguishable from the relationship between Dr. Viecilli and Loma Linda in that the non-signatory entities to whom the clauses were applied against were a successor-in-interest, a related or subsidiary business organization, or a principal/owner of the signatory company. *See Recurrent Capital,* 875 F. Supp. at 311 (finding defendant individual "closely related" to signatory company where he was one of five officers and a shareholder in closely held corporation who was substantially connected to the financing agreement at issue); *Firefly,* 736 F. Supp. 2d at 798, 800 (holding that company president who signed agreement in capacity of president could be bound in his individual capacity); *MGM Studios,* 2010 U.S. Dist. LEXIS 12765 at *2, 15-16 (allowing invocation of forum selection clause against defendant company who was successor-in-interest to original signatory after merger of entities). However, courts have found a non-signatory bound by a forum selection clause not only where the non-signatory had an active role in the signatory company, but also where the non-signatory had an active role in the transaction. *See Prospect Funding Holdings, LLC v. Vinson,* 256 F. Supp. 3d 318, 325 (S.D.N.Y. 2017).

Here, Dr. Viecilli did not hold a principal or executive role at Loma Linda, but he is "closely related" based on his active role in the transaction. Smarter Alloys has plausibly alleged that Dr. Viecilli was not simply an employee of Loma Linda whose connection to the contract ran only through his employment. The third-party complaint asserts that Dr. Viecilli was extensively involved in the negotiation of the contract. It states that he first attempted to form a consulting contract with Smarter Alloys on his own, and that Loma Linda later joined in negotiating this agreement. Indeed, a Memorandum of

Understanding setting forth the terms for the eventual contract was made "between Loma Linda University (LLU) and its faculty member and investigator, Rodrigo Viecilli, [...] and Smarter Alloys (SA)." The MOU was executed by Dr. Viecilli along with Loma Linda's Associate Vice President of Research Affairs approximately three months before the agreement was finalized in the Consulting Agreement. Dr. Viecilli's formal designation as a party in the MOU underlying this contract is indicative of his high level of involvement and crucial role in the transaction.[6] Although not expressly named as a party, Dr. Viecilli executed the contract as a "Principle Investigator," showing that his involvement was contemplated within the agreement. In fact, Loma Linda states in its Complaint that "Dr. Viecilli and LLU entered into a Consulting Agreement with SA [...]." Further, the contract set out specific deliverables in the form of a keynote address and publications that could be performed only by Dr. Viecilli. In its description of consulting services, the contract states, "Company will fund research and development activities to be performed by Principal Investigator as a faculty member and employee of Consultant." The payment schedule also provided that Smarter Alloys would make direct payments to Dr. Viecilli for his work under the contract.

Crediting the facts as alleged in the third-party complaint, Dr. Viecilli was so closely related to this contract that it would be unjust for Smarter Alloys to not be able to reach him as an essential player in this dispute. The terms of the agreement were centered around Dr. Viecilli's own intellectual property and scientific development work. It was, or

---

[6] Dr. Viecilli argues that the "closely related" doctrine should not be applied to him because Smarter Alloys had a chance to seek an agreement with him but chose not to. See Affiliated FM, 328 F. Supp. 3d at 337. The Court is not persuaded by this argument. The fact that the MOU originally named Dr. Viecilli as a formal party, but the final agreement accounted for his role as an acknowledging party is not analogous to the relationship in Affiliated FM between an signatory party seeking enforcement against a subcontractor who was entirely uninvolved in the formation of the contract at issue.

should have been, reasonably foreseeable to Dr. Viecilli that he would be held to the contract. He was actively involved in negotiating the contract terms and the predecessor MOU. *See Power Up Lending Grp, Ltd. v. Murphy*, 2016 U.S. Dist. LEXIS 144268, *20 (E.D.N.Y. Oct. 18, 2016) ("[W]ith respect to the transaction at issue, [individual defendants] were not mere passive employees of [defendant corporation]. On the contrary, it appears that they were both actively engaged in the negotiation and preparation of the operative documents."). Indeed, Dr. Viecilli had a substantial and active relationship to this transaction that exceeds the role of a mere employee of a signatory company. *See Shea Dev. Corp. v. Watson*, 2008 U.S. Dist. LEXIS 22680, *6 (S.D.N.Y. Mar. 24, 2008) (declining to apply forum selection clause against non-signatory employee because there were no allegations that employee "played a sufficiently substantial role in the acquisition negotiations"); *see also Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 2014 U.S. Dist. 108145, *18 (S.D.N.Y. Aug. 4, 2014) (finding no personal jurisdiction over "lower-level" employees because of no showing that they exercised sufficient control over the transaction to consider them "primary actors"); *Infinity Consulting Group, LLC v. Am. Cybersystems, Inc.*, 2010 U.S. Dist. LEXIS 54116, *8 (E.D.N.Y. May 30, 2010) (finding that company's controller was not "closely related" enough to the contract because he was not company president, did not sign on company's behalf, and only had minimal, if any, role in the allegedly fraudulent inducement). Instead, by actively negotiating the terms of the agreement and signing an acknowledgment of the contract, Dr. Viecilli made himself "closely related" to this transaction and consented to the forum selection clause.[7] *See Kahala Corp. v. Holtzman*, 2010 U.S. Dist. LEXIS 128161, *5-6

---

[7] In the alternative, Smarter Alloys argues that Dr. Viecilli may be subject to the forum selection based on the estoppel theory of enforceability. *See generally American Bureau of Shipping v. Teneca Shipyard,*

(Dec. 3, 2010) (holding that the forum selection clause was reasonably communicated to defendant who signed "Individual Provision" on behalf of entity defendants in contested franchise agreements).

Lastly, Dr. Viecilli has not rebutted the presumption that enforcement of the forum selection clause would be unreasonable and unjust, or that the clause was invalid for fraud, overreach, or another reason.[8]

Accordingly, the Court recommends that Dr. Viecilli's motion to dismiss be granted in part and denied in part. The motion to dismiss should be granted as to the second and fourth claims and denied as to the remaining causes of action contained in the amended counterclaim and third-party complaint.

### III.    Leave to Amend Pleadings

Smarter Alloys should not be granted leave to amend its breach of the implied covenant of good faith and fair dealing or fraudulence concealment counterclaims because both claims are futile. Smarter Alloys had an opportunity to amend to its

---

S.P.A, 170 F.3d 349, 353 (2d Cir. 1999) ("A party is estopped from denying its obligation to arbitrate when it receives a "direct benefit" from a contract containing an arbitration clause."). In *LaRoss*, the court found that defendant Family was estopped from denying the forum selection provision when it had directly benefited from the contract. *Id.* at 155-57. Here, the terms of the Consulting Agreement provided that Smarter Alloys would pay more than half the contracted fee, $16,000, directly to Dr. Viecilli "in compensation for the services to be performed." This direct payment arrangement is akin to a revenue sharing agreement, which the *LaRoss* court saw as a key factor in evaluating a non-signatory's receipt of a direct benefit from a contract. *See LaRoss*, 874 F. Supp. 2 at 157. The Court acknowledges that application of this theory outside the arbitration context has not been endorsed by the Second Circuit. *See Smoothline Ltd. v. N. Am. Foreign Trading Corp.*, 249 F.3d 147, 155 n.4 (2d Cir. 2001) (noting that tests for binding non-signatories to forum selection clauses are not the same as binding parties to arbitration clauses). It can also be argued that Dr. Viecilli is not in the position of a plaintiff seeking to obtain the benefits of the contract while avoiding the burdens of it, as is typically found in estoppel analysis. Despite this, the Court views Dr. Viecilli's personal receipt of funds as a direct benefit of the contract and holds, in the alternative, that Dr. Viecilli is estopped from denying the forum selection clause under this theory.

[8] In light of the finding that Smarter Alloys has made a prima facie showing that Dr. Viecilli consented to jurisdiction through the forum selection clause, there is no need to address the parties arguments about the application of New York's long-arm statute. *See Atl. Mut. Ins. Co. v. M/V Humacao*, 169 F. Supp. 2d 211, 216-17 (S.D.N.Y. 2001).

counterclaim and third-party complaint in response to prior motions to dismiss brought by Loma Linda and Dr. Viecilli (Dkt. Nos. 43, 44), but its amended pleadings still fail to meet pleading standards. Leave to amend, though liberally granted, may properly be denied for: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). It is difficult to see how Smarter Alloys would provide plausible support to these claims based on the factual allegations currently before the Court.  Thus, Smarter Alloys' second and fourth counterclaims should both be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, it is recommended that Loma Linda University's (Dkt. No. 50) motion to dismiss certain amended counterclaims and strike an affirmative defense be granted. It is further recommended that Dr. Viecilli's (Dkt. No. 51) motion to dismiss the third-party complaint be granted in part and denied in part. Specifically, the second and fourth counterclaims against Dr. Viecilli should be dismissed and the remaining claims should survive.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a),

and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

*Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.* See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." *Failure to comply with these provisions may result in the District Court's refusal to consider the objection.*

**SO ORDERED.**

Dated:     August 12, 2020
           Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge