UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

LOMA LINDA UNIVERSITY,

       Plaintiff,

   v.

SMARTER ALLOYS, INC.,

       Defendant/Third-Party
       Plaintiff,

   v.

RODRIGO VIECILLI,

       Third-Party Defendant.

─────────────────────────────

19-CV-607-LJV-MJR
DECISION & ORDER

On May 10, 2019, the plaintiff, Loma Linda University ("Loma Linda"), filed a complaint against the defendant, Smarter Alloys, Inc., seeking to recover damages for breach of contract and related claims and to contest ownership over certain patent applications.  Docket Item 1.  About two months later, Smarter Alloys answered the complaint and asserted counterclaims against Loma Linda as well as claims against a third-party defendant, Rodrigo Viecilli, D.D.S., Ph.D.  Docket Item 25.  On May 21, 2021, Loma Linda filed an amended complaint, *see* Docket Item 113, and on June 4, 2021, Smarter Alloys answered the amended complaint and reasserted its counterclaims against Loma Linda and its third-party claims against Dr. Viecilli, *see* Docket Item 115.  In the meantime, this Court referred this case to United States Magistrate Judge Michael J. Roemer for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket Item 45.

At issue in this case is a consulting agreement under which Loma Linda and Dr. Viecilli agreed to perform orthodontic research for Smarter Alloys.  Loma Linda claims that under the consulting agreement, Smarter Alloys owes royalties for sales of the "SmartArch Universal," a dental archwire that Smarter Alloys commercialized.  *See* Docket Item 113.  In the alternative, Loma Linda says that if Smarter Alloys does not owe royalties under the consulting agreement for sales of the SmartArch Universal, then Smarter Alloys must compensate Loma Linda for services that Loma Linda and Dr. Viecilli performed on the SmartArch Universal that fell outside the scope of the consulting agreement.  *See id.*  Loma Linda also challenges the assignment of two patent applications to Smarter Alloys.  *See id.*  Smarter Alloys, in turn, claims that Loma Linda and Dr. Viecilli breached their own contractual obligations under the consulting agreement by failing to satisfy certain deliverables.  *See* Docket Item 103.

On April 19, 2021, Smarter Alloys moved for summary judgment.  *Id.*  About two months later, Smarter Alloys moved for judgment on the pleadings on the newly added quasi-contract claim in Loma Linda's amended complaint.  Docket Item 117.  Loma Linda responded to those motions in June 2021, *see* Docket Items 119 and 126, and Smarter Alloys subsequently replied in support of its motions, *see* Docket Items 128 and 132.

When it replied in further support of its motion for judgment on the pleadings, Smarter Alloys also asked Judge Roemer to convert that motion into a motion for summary judgment.  *See* Docket Item 132.   Judge Roemer granted that request and ordered further briefing.  *See* Docket Item 142.  Loma Linda then responded to Smarter Alloys' now-converted motion for summary judgment on Loma Linda's quasi-contract

claim, Docket Item 150, and Smarter Alloys replied in further support of that motion, Docket Item 155.

Smarter Alloys also moved to supplement the record in support of its motion for summary judgment, *see* Docket Item 145, and the parties fully briefed that motion, *see* Docket Items 148 and 151.  In the meantime, Loma Linda had moved to dismiss and strike Smarter Alloys' amended answer and counterclaims, *see* Docket Item 120, and the parties briefed that motion as well, *see* Docket Items 134 and 143.

On September 28, 2021, Judge Roemer heard oral argument on all the pending motions, Docket Item 159, and the parties then filed supplemental briefing, *see* Docket Items 162, 165, 167, 169.  On March 25, 2022, Judge Roemer issued a Report and Recommendation ("R&R") finding that Smarter Alloys' motion for summary judgment should be granted in part and denied in part.  Docket Item 170.  More specifically, Judge Roemer recommended granting summary judgment to Smarter Alloys on Loma Linda's claims for breach of contract, for breach of the covenant of good faith and fair dealing, to quiet title based on lack of consideration, for rescission based on mutual mistake, and for quasi-contract relief.  *See id.*  But Judge Roemer recommended that this Court deny Smarter Alloys' motion for summary judgment on its breach of contract counterclaim and third-party claim and instead grant Loma Linda and Dr. Viecilli summary judgment on those claims.  *See id.*  Judge Roemer also recommended denying Loma Linda's motion to dismiss and Smarter Alloys' motion to supplement the record as moot.  *See id.*

On April 29, 2022, Loma Linda and Smarter Alloys both objected to the R&R.[1] *See* Docket Items 173, 174.  Loma Linda argues that questions of material fact preclude summary judgment on its breach of contract and quasi-contract claims.  *See* Docket Item 173.  Smarter Alloys, on the other hand, argues that Judge Roemer erred in finding that Loma Linda and Dr. Viecilli had not breached their obligations under the consulting agreement.  *See* Docket Item 174.  On May 20, 2022, both sides responded to the other side's objections, *see* Docket Items 175 and 176, and on June 3, 2022, both sides replied, *see* Docket Items 177 and 178.

On September 29, 2022, this Court heard oral argument on the objections and requested additional briefing on Loma Linda's breach of contract and quasi-contract claims.  *See* Docket Item 180.  On October 13, 2022, the parties submitted additional briefs, *see* Docket Items 182 and 184, and they responded to each other two weeks later, *see* Docket Items 187 and 189.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objections, responses, and replies; the post-argument briefs and responses; and the materials submitted to Judge Roemer.  Based on that *de novo* review, this Court grants Smarter Alloys' motion to supplement the record, considers that

---

[1] Although Loma Linda's objection centers on its breach of contract claim—a claim that Dr. Viecilli does not assert—Dr. Viecilli, who shares legal representation with Loma Linda, joined in the objection.  *See* Docket Item 173.

supplement, denies Smarter Alloys' motion for summary judgment on Loma Linda's breach of contract claim, and concludes that neither side is entitled to summary judgment on Smarter Alloys' breach of contract counterclaim and third-party claim.  The Court accepts and adopts the remainder of the recommendations in the R&R. [2]

## FACTUAL BACKGROUND[3]

This dispute arises out of a consulting agreement between Loma Linda, a nonprofit university located in California, and Smarter Alloys, a Canadian company.  *See* Docket Item 105 at 56-65 (the "consulting agreement").  More specifically, in June 2015, Loma Linda and Smarter Alloys agreed that Loma Linda and Dr. Viecilli, a faculty member at Loma Linda, would provide Smarter Alloys with consulting and research services "directed [at] multi-force archwire prescriptions targeting specific classes of commonly observed malocclusions."[4]  *Id.* at 61.  The consulting agreement had a

---

[2] No party objected to Judge Roemer's recommendations to grant Smarter Alloys' motion for summary judgment on Loma Linda's claims for breach of the covenant of good faith and fair dealing, to quiet title, and for rescission.  And neither 28 U.S.C. § 636 nor Federal Rule of Civil Procedure 72 requires a district court to review the recommendations of a magistrate judge to which no objections are raised.  *See Thomas v. Arn*, 474 U.S. 140, 149-50 (1985).  Although not required to do so in light of that, this Court nevertheless has reviewed the entire R&R and accepts and adopts Judge Roemer's recommendations to grant Smarter Alloys' motion for summary judgment on Loma Linda's claims for breach of the covenant of good faith and fair dealing, to quiet title, and for rescission.

[3] The Court assumes familiarity with the thorough and detailed factual background in the R&R, *see* Docket Item 170 at 4-15, and therefore provides only a brief summary of the facts relevant to the parties' objections.  On a motion for summary judgment, the court "construe[s] the evidence in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor."  *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018).

[4] A "malocclusion" is the improper alignment of teeth, including, as relevant here, impacted or high canines, rotated premolars, or tilted lateral incisors.  *See* Docket Item

5

retroactive effective date of December 10, 2014, and terminated on December 31, 2015.[5]  *Id.* at 56-57.

## I.      ROYALTIES UNDER THE CONSULTING AGREEMENT

Exhibit B of the consulting agreement, the provision at the heart of the parties' dispute, addresses "compensation and reimbursement."  *Id.* at 63.  First, it provides that Smarter Alloys would pay Loma Linda and Dr. Viecilli an aggregate of $31,000, which would be distributed in installments over the course of the agreement.  *See id.*  The parties also agreed that if Smarter Alloys "commercialize[d] a Product," it would "pay a royalty of 4% of gross profits earned on the sale of [that] Product[]."  *Id.*  Alternatively, if Smarter Alloys commercialized a "Product," it could pay a one-time lump sum and "terminate any future royalty payments."  *Id.*

Exhibit B defines a "Product" as "an archwire that uses the force prescriptions targeting the three malocclusions set out in Section 5 of Exhibit A, Research Plan."  *Id.*  And Section 5 of the "Research Plan" identified the three malocclusions that a "Product" would target: (1) "[a]n impacted or high canine," (2) "[r]otated premolars," or (3) "[t]ilted lateral incisors."  *Id.* at 61-62.

Smarter Alloys developed two archwires that are relevant here.  First, in 2015, it developed the "SmartArch Focus," a "prototype archwire targeted to [treat] the specific

---

105 at 61-62; *see generally Malocclusion of Teeth*, Mount Sinai, https://www.mountsinai.org/health-library/diseases-conditions/malocclusion-of-teeth (last updated Jan. 24, 2022).

[5] The consulting agreement also provided that any lawsuit arising out of the agreement would be governed by New York law and resolved in this District.  *See* Docket Item 105 at 58.

malocclusion of a high canine."  Docket Item 103-1 at ¶ 51; Docket Item 124-2 at 22-23.

Smarter Alloys "never sold any of the SmartArch Focus archwires."  Docket Item 103-1

at ¶ 53; Docket Item 124-2 at 23.

Smarter Alloys also developed a "universal profile archwire," the "SmartArch

Universal."  Docket Item 103-1 at ¶¶ 54-55; Docket Item 124-2 at 23-24.  The

SmartArch Universal "is treated to modify its stiffness along each segment of the wire

between adjacent teeth."  Docket Item 103 at ¶ 93; Docket Item 124-2 at 39.  Smarter

Alloys "brought the SmartArch Universal to market" in April 2016.  Docket Item 124-2 at

52; Docket Item 130 at 56.  As mentioned above, the crux of the parties' dispute here

centers around whether the SmartArch Universal is a "Product" under the consulting

agreement and thus whether Smarter Alloys owes Loma Linda royalties (or the one-time

lump sum payment) for its commercialization.

## II.    DELIVERABLES UNDER THE CONSULTING AGREEMENT

In addition to its provisions regarding the possible development of an archwire

"Product," the consulting agreement also listed three "[d]eliverables" that Loma Linda

and Dr. Viecilli would provide: (1) a keynote address at the American Association of

Orthodontists annual meeting in May 2015, (2) advice to Smarter Alloys on "booth set

up and clinical demonstrations" for that meeting, and (3) "[p]ublications" on three

specified topics.  Docket Item 105 at 62.  Those three topics were: (a) the

"[d]etermination of Resistance (Anchorage) numbers for teeth," (b) the "[e]ffects of

interbracket distance, friction coefficient, and wire diameter in a three[-]bracket

alignment scenario with NiTi [(nickel-titanium alloy)] wires," and (c) "experimental results

and force prescriptions for the three malocclusion scenarios set out in Section 5 of the Research Plan." *Id.*

Not all those deliverables were satisfied. For example, before the parties even signed the consulting agreement in June 2015, the American Association of Orthodontists annual meeting had come and gone without a keynote address from Dr. Viecilli. *See* Docket Item 124-2 at 51; Docket Item 130 at 50.

What is more, the parties agree that no paper satisfying Deliverable 3(b) ever was published.[6] *See* Docket Item 103-1 at ¶ 60; Docket Item 124-2 at 25. Dr. Viecilli and Smarter Alloys employees did coauthor a paper that covered the topics listed in Deliverable 3(b) (the "2019 paper"). *See* Docket Item 103-1 at ¶ 61; Docket Item 124-2 at 26. And that paper "was accepted and scheduled for publication in the May 2019 issue of the American Journal of Orthodontics and Dentofacial Orthopedics." *See* Docket Item 103-1 at ¶ 64; Docket Item 124-2 at 27. But Dr. Viecilli withdrew his permission for the paper's publication. *See* Docket Item 103-1 at ¶ 65; Docket Item 124-2 at 27. Smarter Alloys contends that Loma Linda and Dr. Viecilli intentionally torpedoed the publication of the 2019 paper because of the parties' dispute over the subject of this litigation—Loma Linda's request for royalties on the SmartArch Universal. *See* Docket Item 174 at 4-5; *see also* Docket Item 105 at 121-22 (Dr. Viecilli's testifying that the publication was "delay[ed] until we made sure that Smarter Alloys was fulfilling [its] obligation that was in the [c]onsulting [a]greement").

---

[6] The numbering of the deliverables in the consulting agreement is the same as the numbering above. So Deliverable 3(b) is a publication addressing the "[e]ffects of interbracket distance, friction coefficient, and wire diameter in a three[-]bracket alignment scenario with NiTi wires." *See* Docket Item 105 at 62.

## LEGAL PRINCIPLES

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant—that is, the party seeking summary judgment—has the burden of demonstrating that there is no disputed material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant may satisfy this burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *see* Fed. R. Civ. P. 56(c)(1)(B). Once the movant has satisfied its initial burden, "the nonmoving party must come forward with specific facts" showing that there is a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted). If the nonmovant fails to do so, the court may grant summary judgment. *See Celotex*, 477 U.S. at 322-23.

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by

the party resisting the motion will not defeat summary judgment."  *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

## DISCUSSION

I.      **BREACH OF CONTRACT**

"When deciding a summary judgment motion, a court must construe all the evidence in the light most favorable to the nonmoving party . . . and draw all inferences and resolve all ambiguities in that party's favor."  *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008).  "This generally means that a motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning."  *Id.*  "Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages[,] and terminology as generally understood in the particular trade or business."  *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (citation and internal quotation marks omitted).  "To the extent the moving party's case hinges on ambiguous contract language, summary judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case."  *Topps*, 526 F.3d at 68.

## A.      Loma Linda's Breach of Contract Claim Against Smarter Alloys

Judge Roemer recommended granting Smarter Alloys' motion for summary judgment on Loma Linda's breach of contract claim because he found that the definition of "Product" in the consulting agreement's royalty provision was "unambiguous as a matter of law."  Docket Item 170 at 19.  Judge Roemer read that definition to include only an "archwire[] that target[s] the identified malocclusion areas, rather than [an] archwire[] designed for all sections of the dental arch."  *Id.*  And because the SmartArch Universal can treat both the identified malocclusions as well as others, Judge Roemer found that it was not a "Product" under the agreement.  *See id.* at 22.

Loma Linda objects to that recommendation and argues that the term "Product" is ambiguous.  *See* Docket Item 173.  More specifically, Loma Linda argues that "Product" could mean "a single archwire . . . capable of targeting all three malocclusions simultaneously"; or it could mean "a series of different or separate archwires, each capable of targeting at least one of the three identified malocclusions"; or it could mean "a series of different or separate archwires, each capable of targeting one—and only one—of the three malocclusions."  *See id.* at 18.  And Loma Linda contends that because the SmartArch Universal falls within that first interpretation of "Product," Smarter Alloys owes royalties under the consulting agreement.  *See id.*

Smarter Alloys, by contrast, maintains that the consulting agreement is unambiguous and that Loma Linda's breach of contract claim therefore is meritless.[7]

---

[7] In its briefing to Judge Roemer, Smarter Alloys also cursorily argued that Loma Linda could not maintain its breach of contract claim because Loma Linda did not itself adequately perform under the contract.  *See* Docket Item 103-6 at 25-26.  Because he found that Loma Linda's breach of contract claim failed for other reasons, Judge Roemer did not reach that argument.  *See* Docket Item 170 at 17 n.9.

Smarter Alloys argues that Loma Linda's interpretation ignores the requirement that a "Product" use "the force prescriptions" *targeting* the three malocclusions and improperly equates the term "targeting" with the term "treating."  *See, e.g.*, Docket Item 176 at 14, 19; Docket Item 182 at 6-10.  So Smarter Alloys says that the royalty provision of the consulting agreement unambiguously covers only an archwire that "uses force prescriptions targeting one or more of the three specified malocclusions" listed in Exhibit A—not "a universal archwire," such as the SmartArch Universal, "that targets all teeth with average optimal forces."  Docket Item 182 at 5.

This Court agrees with Loma Linda that the plain language of the consulting agreement is ambiguous.  The consulting agreement says that Smarter Alloys owes royalties on the sales of an "archwire that uses the force prescriptions targeting the three malocclusions set out in Section 5 of Exhibit A, Research Plan."  Docket Item 105 at 63.  It does not say that the archwire must use force prescriptions that target *only* those three malocclusions.  So "Product" might be limited to an archwire using force

---

Smarter Alloys has not renewed that argument in its response to Loma Linda's objection or in any of its briefing before this Court, and this Court therefore could decline to consider it altogether.  *Cf. SciCo Tec GmbH v. Bos. Sci. Corp.*, 599 F. Supp. 2d 741, 743 (E.D. Tex. 2009) ("[O]bjections to a magistrate judge's order cannot simply be a demand that a district judge conduct a *de novo* review of the entire record in a blind hunt for a nugget of harmful error buried somewhere in mounds of briefing and oral arguments.").  In any event, Smarter Alloys now "does not dispute" that any breach of the consulting agreement by Loma Linda was not material, *see* Docket Item 174 at 3, and therefore apparently concedes that Loma Linda has adequately performed its obligations under the consulting agreement.  *See Optima Media Grp. Ltd. v. Bloomberg L.P.*, 2021 WL 1941878, at *8 (S.D.N.Y. May 14, 2021) (determining adequate performance under a contract based on whether the party "substantially . . . perform[ed] its side of the bargain or, synonymously, [whether] that party [] committed a material breach").  And for the reasons stated below, this Court finds that Smarter Alloys has not conclusively demonstrated that Loma Linda has in fact breached the contract.  *See infra* at 17-21.  So Loma Linda's breach of contract claim does not founder for failure to demonstrate its adequate performance.

prescriptions that target one or more of the three malocclusions *and only those three malocclusions;* or "Product" might include an archwire using force prescriptions that target one or more of them, as well as others, simultaneously.  Stated differently, the consulting agreement requires that a "Product" use "the force prescriptions targeting" the three listed malocclusions, *see id.*; it does not require that a "Product" use those force prescriptions to the exclusion of using force prescriptions targeting any other part of the dental arch.  And that is an ambiguity.[8]

Moreover, Smarter Alloys' interpretation of the term "Product" is itself ambiguous and depends on an extra-textual gloss.  That is, defining "Product" as an archwire that "uses force prescriptions targeting one or more of the three specified malocclusions" in Exhibit A, *see* Docket Item 182 at 5, merely rehashes the same language as the consulting agreement without any textual analysis or explanation.  Smarter Alloys' proposed definition therefore gets this Court no closer to an answer on what is covered by the royalty provision of the consulting agreement.  And while Smarter Alloys maintains that a "Product" cannot be a "universal archwire that targets all teeth with average optimal forces," *see id.*, that self-serving conclusion appears nowhere in the text of the consulting agreement and begs the question.[9]  So this Court cannot conclude

---

[8] Had the parties wanted to specify the definition that Smarter Alloys urges and that Judge Roemer accepted, they could easily have done so by inserting the word "only"—*i.e.*, by defining "Product" as "an archwire that uses the force prescriptions targeting *only* the three malocclusions set out in Section 5 of Exhibit A, Research Plan." *See* Docket Item 105 at 63.  They did not.  And the absence of that word, or some similar limiting phrasing, creates the ambiguity highlighted by this Court.

[9] If Smarter Alloys is arguing that the SmartArch Universal is not a "Product" because it "targets all teeth with average optimal forces" and therefore does not use the force prescriptions that target the three malocclusions listed in the consulting

that the royalty provision "is . . . wholly unambiguous and [] convey[s] a definite meaning" based on that sort of conclusory extra-textual limitation.  *See Topps*, 526 F.3d at 68.

     Smarter Alloys also faults Loma Linda for eliding the distinction between "targeting" the three specified malocclusions and merely "treating" them.  *See* Docket Item 182 at 10.  But Smarter Alloys concedes that "the term 'targeting' is not a term of art in the field."  *Id.* at 6; *see also* Docket Item 160 at 7 (Smarter Alloys' counsel conceding to Judge Roemer that "the average orthodontist . . . wouldn't necessarily know" whether or not an archwire is "targeted" to a specified malocclusion).  And Smarter Alloys does not point to anything in the consulting agreement that either defines "targeting" or distinguishes between "targeting" and "treating" malocclusions.  So this Court fails to see how any distinction between those terms—terms that Smarter Alloys has not defined or distinguished with any precision—unambiguously supports Smarter Alloys' interpretation of the consulting agreement.

     For those reasons, the consulting agreement itself is ambiguous, and this Court therefore turns to the extrinsic evidence.  *See Topps*, 526 F.3d at 69 ("[I]t is proper to consider extrinsic evidence in interpreting the ambiguous terms [of a fully integrated contract], irrespective of the parol evidence rule." (applying New York law)). But the extrinsic evidence does not clarify that ambiguity.

     For example, Smarter Alloys leans heavily on its argument that "Loma Linda [has] failed to identify the force prescriptions" to which the consulting agreement refers.

---

agreement, that is a question of fact and not an issue that can be resolved on summary judgment.

*See, e.g.*, Docket Item 182 at 9.  And Smarter Alloys cites the deposition of Loma

Linda's expert witness, Ruedger Rubbert, who testified that he "ha[d] not seen[] . . .

anything that would qualify as [a] definitive force prescription."[10]  *Id.* at 8-9 (quoting

Docket Item 147 at 6).  Therefore, Smarter Alloys argues, because Loma Linda has not

identified the "force prescriptions" that are referred to by the consulting agreement, it

cannot possibly argue that the SmartArch Universal uses those force prescriptions.  *Id.*

at 7-9.

But as Loma Linda notes, *see* Docket Item 189 at 4, Rubbert's testimony was not

as definitive as Smarter Alloys suggests.  In fact, the testimony that Smarter Alloys cites

came immediately after Rubbert testified that he "[did not] know how to answer" whether

he had "identif[ied] the force prescriptions targeting the three malocclusions" in the

consulting agreement because nothing in the consulting agreement "clarifie[d]" what

those force prescriptions actually were.  Docket Item 147 at 5-6.  In other words, like

this Court, Rubbert could not identify the "force prescriptions" in the consulting

agreement because the consulting agreement does not define them.[11]  *See id.*; *see also*

_____

[10] After Smarter Alloys' motion for summary judgment was fully briefed, it moved
to supplement the summary judgment record with additional excerpts of Rubbert's
deposition.  *See* Docket Item 145.  Judge Roemer concluded that the motion to
supplement was moot in light of his recommendation to grant Smarter Alloys' motion for
summary judgment.  *See* Docket Item 170 at 38.  This Court now grants Smarter Alloys'
motion to supplement the record and considers that testimony in deciding these
motions.  Ultimately, however, the Court concludes that while Rubbert's additional
testimony may well prove useful to a jury in evaluating the weight to assign his opinion,
it does not resolve the factual disputes that preclude summary judgment here.

[11] Smarter Alloys' contention that the SmartArch Universal uses force
prescriptions that predate the consulting agreement, *see* Docket Item 182 at 12, also
misses the mark.  Smarter Alloys relies only on vague citations to the consulting
agreement to support its argument that a "Product" cannot use force prescriptions that
predate the consulting agreement, *see, e.g.*, Docket Item 176 at 14 n.4; none of the
provisions it relies on unambiguously foreclose the use of preexisting force prescriptions

Docket Item 124-3 at 122 (Rubbert's noting in his expert report that "[t]he phrase ["the force prescriptions"] is not defined in the [c]onsulting [a]greement").

Moreover, Rubbert concluded in his expert report that the SmartArch Universal "falls within the scope of the definition of Product as set forth in the [c]onsulting [a]greement."  Docket Item 124-3 at 132.  Indeed, he concluded that the SmartArch Universal uses "optimal forces" to "target[] the maloccluded situation of each tooth" at the heart of the consulting agreement, including "canines, premolars, and lateral incisors."  *Id.* at 128, 132; *see also id.* at 131-32 (Rubbert's opining that the SmartArch Universal "deliver[s] the ideal forces targeted to resolve" high canines, tilted lateral incisors, and rotated premolars).  So at least according to Loma Linda's expert, Smarter Alloys may well owe royalties.

What is more, Dr. Viecilli testified at his deposition that the SmartArch Focus "could as well [have used] the exact same prescription for the canine area that was in the SmartArch [Universal]."  *See* Docket Item 124-3 at 370.  And Smarter Alloys' Vice President of Operations previously conceded that "[t]he SmartArch Focus is a Product under the Consulting Agreement."  Docket Item 158-1 at 103.  While Smarter Alloys now maintains that the SmartArch Focus and the SmartArch Universal use different force prescriptions because "it is impossible for [] two wires with different stiffness profiles to use the same force prescription," Docket Item 187 at 4, that is the sort of

---

in a covered "Product."  What is more, as Judge Roemer noted, the parties dispute whether the SmartArch Universal in fact uses those preexisting force prescriptions or whether additional force prescriptions were developed later.  *See* Docket Item 170 at 6-7; *see also* Docket Item 124-2 at 8-9.  In light of the lack of clear language in the consulting agreement and that factual dispute, the relationship between preexisting force prescriptions and the SmartArch Universal does not resolve the disputed issues of fact that preclude summary judgment here.

material factual dispute that is not amenable to resolution on a motion for summary judgment.

Both Loma Linda and Smarter Alloys have offered plausible interpretations of "Product." Perhaps a "Product" is limited to archwires that use force prescriptions targeting only the three malocclusions, as Smarter Alloys argues; perhaps not, as Loma Linda contends. But the consulting agreement does not unambiguously resolve which of those two readings is correct. And Loma Linda has provided extrinsic evidence that supports its interpretation that the SmartArch Universal is covered by the royalty provision in the consulting agreement. For those reasons, Smarter Alloys' motion for summary judgment on Loma Linda's breach of contract claim is denied. *See Topps*, 526 F.3d at 68.

### B.   Smarter Alloys' Breach of Contract Counterclaim Against Loma Linda and Third-Party Claim Against Dr. Viecilli

Judge Roemer recommended denying Smarter Alloys' motion for summary judgment on its breach of contract counterclaim against Loma Linda and third-party claim against Dr. Viecilli. Docket Item 170 at 25-29. More specifically, Judge Roemer found that Loma Linda's and Dr. Viecilli's failure to publish the 2019 paper—which covered the topics listed in Deliverable 3(b)—was not a material breach of the consulting agreement and that, in any event, Smarter Alloys waived any alleged breach. *Id.* Smarter Alloys objects to those conclusions, arguing that it can recover even if a breach is not material and that it did not waive the fulfillment of Deliverable 3(b). *See* Docket Item 174.

As noted above, the consulting agreement provided that Loma Linda and Dr. Viecilli would produce certain "[d]eliverables," including a "[p]ublication[]" on the

17

"[e]ffects of interbracket distance, friction coefficient, and wire diameter in a three[-]bracket alignment scenario with NiTi wires."  Docket Item 105 at 62.  Although a paper covering those topics was scheduled for publication in 2019, Dr. Viecilli ultimately withdrew his consent for that publication.  *See* Docket Item 103-1 at ¶¶ 64-65; Docket Item 124-2 at 27.  Smarter Alloys argues that the failure to publish constituted a breach of the consulting agreement that it did not waive, *see* Docket Item 174; in response, Loma Linda and Dr. Viecilli argue that this failure was not a breach at all, and that if it was, Smarter Alloys waived it, *see* Docket Item 175.

As an initial matter, this Court agrees that Smarter Alloys can pursue a breach of contract claim regardless of whether the alleged breach was material.  *See Orlander v. Staples, Inc.*, 802 F.3d 289, 298 (2d Cir. 2015) ("New York courts routinely allow a nonbreaching party to seek damages, not only for a material breach, but also for a minor, or immaterial, breach as well.").  So the question here is whether Loma Linda's and Dr. Viecilli's failure to publish the 2019 paper in fact breached the consulting agreement, not whether any breach was material.

And the answer to that question is not found in the text of the consulting agreement.  As Loma Linda and Dr. Viecilli correctly observe, the consulting agreement does not include any clear standard for fulfilling the publication of Deliverable 3(b).[12]

---

[12] Loma Linda and Dr. Viecilli also point out that "the Deliverables are not even mentioned as a potential term in the main body of the [consulting agreement]."  Docket Item 175 at 6.  But that argument is somewhat puzzling in light of the fact that Loma Linda's claim that it is entitled to royalties hinges on a clause included in Exhibit B of the consulting agreement—that is, a term that likewise is not contained in the "main body" of the consulting agreement.  Loma Linda and Dr. Viecilli further argue that this Court already has concluded that the failure to publish the paper was not a breach of the consulting agreement because "the [consulting agreement] did not obligate Loma Linda to cooperate in marketing activities."  *Id.* at 10.  But to support that argument, Loma

*See* Docket Item 175 at 6.  The consulting agreement does not, for example, require Loma Linda and Dr. Viecilli to submit a publication satisfying Deliverable 3(b) before a certain date or even define how Deliverable 3(b) would be published.  So the consulting agreement does not clearly resolve how Loma Linda and Dr. Viecilli might have breached the agreement by their failure to publish the 2019 paper.

On the other hand, this Court cannot at this point adopt Loma Linda's and Dr. Viecilli's proposed interpretation: that the consulting agreement only "generally" required consulting services and "does not require fulfillment of the [d]eliverables" at all.  *See id.* "Under New York law, contracts are construed to give a reasonable and effective meaning to all terms and not to leave a part unreasonable or of no effect."  *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 338 (S.D.N.Y. 2020) (alterations, citation, and internal quotation marks omitted).  So this Court assumes that the parties intended Deliverable 3(b) to be satisfied in some respect rather than ignored altogether.

Because the language of the consulting agreement does not definitively resolve whether Loma Linda's and Dr. Viecilli's failure to publish the paper was a breach, the Court turns to the extrinsic evidence.  *See Topps*, 526 F.3d at 69.  But again, extrinsic evidence does not resolve the contractual ambiguity.

For example, Smarter Alloys argues that Dr. Viecilli admitted that he continued to work on the 2019 paper after 2015 "out of contractual obligation," Docket Item 174 at 5;

---

Linda and Dr. Viecilli quote Judge Roemer's prior R&R, which found that "Dr. Viecilli['s] and Loma Linda's responsibilities [under the consulting agreement] were to perform research and development activities and *to produce specific deliverables*."  *Id.* (emphasis in original) (quoting Docket Item 64 at 20).  So neither the location of the terms in the agreement nor Judge Roemer's prior decision sheds any light on Smarter Alloys' counterclaim and third-party claim here.

*see also* Docket Item 105 at 418, suggesting that Dr. Viecilli at least then believed that the consulting agreement required the publication of the 2019 paper.  At the same time, however, that message does not clarify the ambiguities about what precisely would satisfy the "publication" requirement; how, in turn, Loma Linda and Dr. Viecilli could breach the consulting agreement by failing to satisfy that requirement; and when the failure to publish might ripen into a breach.  In other words, nothing in the agreement suggests that publishing the 2019 paper in the American Journal of Orthodontics and Dentofacial Orthopedics—and not some other paper written at some other undefined time for some other undefined publication—was the only way to satisfy Deliverable 3(b). So neither the consulting agreement nor the extrinsic evidence resolve whether Loma Linda's and Dr. Viecilli's failure to publish the 2019 paper was a breach.

Moreover, Loma Linda and Dr. Viecilli have not conclusively demonstrated that Smarter Alloys waived its right to insist on the satisfaction of Deliverable 3(b).  Under New York law, "[a] contractual right may be waived if it is 'knowingly, voluntarily[,] and intentionally abandoned.'"  *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 95 (2d Cir. 2015) (quoting *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104, 850 N.E.2d 653, 658 (2006)).  "But 'waiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection.'"  *Id.* (quoting *Fundamental Portfolio Advisors*, 7 N.Y.3d at 104, 850 N.E.2d at 658).

Loma Linda and Dr. Viecilli argue that even if the failure to publish the 2019 paper was a breach of the consulting agreement, Smarter Alloys waived that breach by failing to insist on other deliverables listed in the consulting agreement.  *See* Docket

Item 175 at 14-17.  For example, as mentioned above, Smarter Alloys could not insist on the satisfaction of Deliverable 1—giving the May 2015 keynote address—because that date had passed without Dr. Viecilli's giving the keynote address when the consulting agreement was signed.  But while that might show that Smarter Alloys waived Deliverable 1, it says nothing about whether Smarter Alloys waived Deliverable 3(b).  And again, this Court presumes that the parties intended Deliverable 3(b) to have some independent significance regardless of whether or not Deliverable 1 could be satisfied.  *See State St. Glob. Advisors*, 431 F. Supp. 3d at 338.  So even if Smarter Alloys "knowingly, voluntarily[,] and intentionally abandoned" its right to *some* deliverables under the consulting agreement, it does not necessarily follow that it did the same for *all* deliverables.  *See Luitpold Pharms.*, 784 F.3d at 95.

Because Smarter Alloys has not shown that Loma Linda's and Dr. Viecilli's failure to publish the 2019 paper in the American Journal of Orthodontics and Dentofacial Orthopedics was an unambiguous breach of the consulting agreement, its motion for summary judgment on its breach of contract counterclaim and third-party claim is denied.  But because this Court cannot conclusively determine that this failure was *not* a breach of the consulting agreement, the Court declines to adopt Judge Roemer's recommendation to grant Loma Linda and Dr. Viecilli summary judgment on that claim.

## II.    QUASI-CONTRACT

Judge Roemer recommended granting Smarter Alloys' motion for summary judgment on Loma Linda's quasi-contract claim because he concluded that Loma Linda "has not shown that Dr. Viecilli performed services outside the scope of the [consulting agreement]."  Docket Item 170 at 37.  Loma Linda objects to that recommendation and

argues that Dr. Viecilli performed work outside the scope of the consulting agreement because he provided the "methodology to translate force prescriptions into stiffness profiles so that archwires could 'use' those force prescriptions."  Docket Item 173 at 33.  Essentially, Loma Linda maintains that one of two theories must be true: either the SmartArch Universal is a "Product" under the consulting agreement and Loma Linda therefore can recover under a breach of contract theory, or any work that Dr. Viecilli performed that led to the SmartArch Universal necessarily fell outside the scope of the consulting agreement and Loma Linda therefore can recover under a quasi-contract theory.  *See id.*

As Judge Roemer observed, however, Loma Linda has not provided any evidence to support its claim that the research Dr. Viecilli performed was *outside* the scope of the consulting agreement.  *See* Docket Item 170 at 37-38.  And the scope of the consulting agreement was quite broad:  Loma Linda and Dr. Viecilli agreed to perform "research and development activities" that would be "directed to multi-force archwire prescriptions targeting specific classes of commonly observed malocclusions."  Docket Item 105 at 61; *see also id.* (outlining a research plan directed at "explor[ing] changes in stiffness of NiTi wires for various malocclusion situations and [the] resulting effects on forces").  In other words, the consulting agreement covered more than the development of a "Product" that would entitle Loma Linda to royalties.  And contrary to Loma Linda's suggestion that any work purportedly outside the consulting agreement was conducted "gratis," *see* Docket Item 150 at 6, the parties do not dispute that Smarter Alloys paid $31,000 in installment payments that the parties bargained for, *see* Docket Item 176 at 21-22.

Nor has Loma Linda shown that it can recover for a quasi-contract claim based on an alleged modification of the definition of "Product."  *See* Docket Item 173 at 32-33. As an initial matter, the consulting agreement clearly stated that "[n]o course of conduct or dealing between the parties shall act as a modification or waiver of any provision of this Agreement, and only a modification or waiver which is contained in a written agreement signed by both parties shall be effective."  Docket Item 105 at 58.  Loma Linda does not say that there was a written modification signed by both parties; instead, Loma Linda points to a change in the definition of "Product" before the consulting agreement was signed and a text message exchange about royalties.  *See* Docket Item 173 at 32-33.

But this Court cannot see how the consulting agreement was *later* modified by a change made *before* its execution.  And while Loma Linda points to a text message exchange purportedly demonstrating that Smarter Alloys' "intend[ed] to [pay royalties] when [Smarter Alloys] ma[d]e some money" from the SmartArch Universal, *see id.* at 32, that does not suggest any modification to the consulting agreement itself.

At bottom, Loma Linda's claim that the consulting agreement was modified seems to be an argument that the parties' conduct both before and after the execution of the consulting agreement shows that they understood the SmartArch Universal to be a "Product" that triggered the royalty provision.  For the reasons stated above, this Court finds the definition of "Product" to be ambiguous, and extrinsic evidence—including what Loma Linda cites in support of its quasi-contract claim—may well show that Loma Linda's interpretation is correct.  But that is a contract argument, not a standalone quasi-contract claim.

For those reasons, and for the reasons stated in the R&R, this Court grants Smarter Alloys' motion for summary judgment on Loma Linda's quasi-contract claim.[13]

## CONCLUSION

For the reasons stated above, Smarter Alloys' motion for summary judgment, Docket Items 103 and 117, is GRANTED in part and DENIED in part.  More specifically, Smarter Alloys' motion is granted with respect to Loma Linda's claims for breach of the covenant of good faith and fair dealing, to quiet title, for rescission, and for quasi-contract relief.  Smarter Alloys' motion is denied with respect to Loma Linda's breach of contract claim and Smarter Alloys' breach of contract counterclaim against Loma Linda and third-party claim against Dr. Viecilli.  Smarter Alloys' motion to supplement the record, Docket Item 145, is GRANTED, and Loma Linda's motion to dismiss, Docket Item 120, is DENIED as moot.  The parties shall contact the Court within 30 days of the date of this order to schedule a status conference so that the Court can set a trial date.

---

[13] After Loma Linda amended its complaint to add its quasi-contract claim, Smarter Alloys filed an amended answer and amended counterclaims.  *See* Docket Item 115.  Loma Linda moved to dismiss and strike portions of that filing, arguing that it went beyond the scope of the amended complaint.  *See* Docket Item 120.  Judge Roemer recommended denying that motion as moot in light of his recommended resolution of the remaining motions, *see* Docket Item 170 at 38; Loma Linda has not objected to that recommendation or otherwise said anything about that motion to this Court.  Because Loma Linda's quasi-contract claim fails for the reasons stated above, and absent any other argument about how that motion is relevant to the disposition of the remaining motions here, Loma Linda's motion to dismiss and strike, Docket Item 120, is denied as moot.

SO ORDERED.

Dated:   March 16, 2023
         Buffalo, New York


                                        /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE