**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOMA LINDA UNIVERSITY,<br><br>        Plaintiff,<br><br>v.<br><br>SMARTER ALLOYS INC.,<br><br>        Defendant / Third-Party Plaintiff,<br><br>v.<br><br>RODRIGO VIECILLI,<br><br>        Third-Party Defendant. | Civil Action No. 1:19-CV-00607-LJV |

**SMARTER ALLOYS' MOTION *IN LIMINE* TO EXCLUDE
ANTICIPATED TESTIMONY OF PLAINTIFF'S EXPERT WITNESS
RUEDGER RUBBERT**

Defendant Smarter Alloys Inc. moves to exclude the testimony of Plaintiff Loma Linda University's proposed technical expert Ruedger Rubbert under Federal Rules of Evidence 402, 403, and 702 on the following:

1. Contract interpretation, and the meaning of terms in the Consulting Agreement;

2. The definition of "Product" in the Consulting Agreement;

3. Whether the SmartArch Universal is a "Product" covered by the royalty provision of the Consulting Agreement;

4. When the force prescription used in the SmartArch Universal was developed;

5. Conception of inventions disclosed on the '727 Application and the '338 Application; and

6. Inventorship of the '727 Application, the '338 Application, the '204 Application, and the '085 Application.

Mr. Rubbert's proposed testimony is not based on scientific analysis, would improperly offer opinions on contract interpretation, usurp the jury's role, and introduce topics on which the Court has already granted Smarter Alloys summary judgment. None of Mr. Rubbert's proposed testimony would be helpful to the jury, and his testimony should be completely excluded.

## SUMMARY OF MR. RUBBERT'S OPINIONS

Mr. Rubbert opines that the SmarArch Universal "falls within the scope of the term 'Product' as set forth in the Consulting Agreement." (Rubbert Report ¶ 18.)[1] He also opines that "the term 'Product' as set forth in the Consulting Agreement is not limited to an archwire using the force prescriptions targeting only one of the three malocclusions listed in Section 5 of Exhibit A, Research Plan or targeted to a specific malocclusion listed in Section 5 of Exhibit A, Research Plan, to the exclusion of other malocclusions." (Rubbert Report ¶ 19 (emphases omitted).) Mr. Rubbert opines that "the inventions disclosed in the '727 [patent] Application and '338 [patent] Application were conceived prior to December 10, 2014, the Effective Date of the Consulting Agreement." (Rubbert Report ¶ 20.)[2] And Mr. Rubbert opines that "neither the '204 [patent] Application nor the '085 [patent] Application, both filed by Smarter Alloys, reflect the proper inventorship of the subject matter of those applications"[3]; that "any inventive subject matter disclosed" in those applications "was already disclosed in the '727 Application and/or '338

---

[1] A copy of the expert report of Ruedger Rubbert dated March 31, 2021, is attached as Exhibit B to the Declaration of Steven P. Nonkes being filed in support of Smarter Alloys' motions *in limine* ("Nonkes Decl.").

[2] Loma Linda and Dr. Viecilli assigned the '727 Application and '338 Application to Smarter Alloys pursuant to the parties' Consulting Agreement.

[3] Smarter Alloys filed the '204 Application or the '085 Application, claiming priority to the '727 Application and '338 Application.

2

Application"; and that Dr. Khan "is not a proper named inventor on the '204 Application or the '085 Application." (Rubbert Report ¶ 21.)

**ARGUMENT**

None of Mr. Rubbert's proffered opinions is a proper subject for expert testimony in this case. The Court, in denying summary judgment, relied on Rubbert's inability to identify the definition of "Product" in the Consulting Agreement. (ECF No. 193 at 15.) And Mr. Rubbert has no particular expertise in contract interpretation.

Mr. Rubbert's intended testimony that the SmartArch Universal is a "Product" as defined in the Consulting Agreement likewise would improperly opine on the ultimate question in this case and substitute his judgment for that of the jury. In addition, any opinion Mr. Rubbert might offer on whether the SmartArch Universal uses "the force prescriptions targeting the three malocclusions set out in Section 5 of Exhibit A, Research Plan" and therefore qualifies as a "Product" as defined in the Consulting Agreement would not be the product of reliable principles and methods, nor would it be the result of reliable application of scientific principles and methods to the facts of the case, because Mr. Rubbert did not do any technical analysis. Instead, he simply offers conclusions, without performing any calculation or scientific analysis.

Finally. Mr. Rubbert's opinions regarding conception of the inventions of the '727 Application and the '338 Application and his opinions on inventorship are no longer relevant because the Court has already ruled in Smarter Alloys' favor on Loma Linda's claims seeking to rescind its assignment of patent applications to Smarter Alloys.

A. **Standards**

Federal Rule of Evidence 702 permits the admission of expert testimony as long as:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The party offering the expert carries the burden of establishing the requirements imposed by Rule 702, and the court acts as a "gatekeeper" to ensure that the "expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Teachers' Ret. Sys. of La. v. Pfizer, Inc. (In re Pfizer Inc. Sec. Litig.)*, 819 F.3d 642, 658 (2d Cir. 2016) (citations and internal quotation marks omitted).

"In addition to Rule 702, expert testimony may be excluded under Federal Rules of Evidence 402 and 403, if it is irrelevant or more prejudicial than probative…." *In re Axa Equitable Life Ins. Co. Coi Litig.*, 595 F. Supp. 3d 196, 250 (S.D.N.Y. 2022) (citing *Tchatat v. City of New York*, 315 F.R.D. 441, 444 (S.D.N.Y. 2016). Testimony that is admissible under Rule 702 still may be struck under Federal Rule of Evidence 403 if the Court finds that "the probative value of the evidence is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Expert testimony is particularly susceptible to these dangers, "due to the unique weight such evidence may have in a jury's deliberations." *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than lay witnesses." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (quoting Jack B. Weinstein, Rule

702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991)).

"[E]ven otherwise qualified experts may not simply offer conclusory opinions" because "[c]onclusory opinions are a form of '*ipse dixit*,' and often provide an insufficient basis upon which to assess reliability." *Estate of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 426 (S.D.N.Y. 2015) (citations omitted). "An 'expert is not a black box into which data is fed at one end and from which an answer emerges at the other; the Court must be able to see the mechanisms in order to determine if they are reliable and helpful.'" *Valvetech, Inc. v. Aerojet Rocketdyne, Inc.*, 2023 U.S. Dist. LEXIS 88159, at *7 (W.D.N.Y May 19, 2023) (quoting *Lawrence v. Raymond Corp.*, 2011 U.S. Dist. LEXIS 85798 (N.D. Ohio Aug. 4, 2011)). "That is why 'an expert relying solely on his experience must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Id.* (quoting *Potter v. United States*, 2020 U.S. Dist. LEXIS 95381 (S.D.N.Y. May 30, 2020)).

At the same time, courts "must assure that expert testimony is 'helpful to, but does not usurp the province of, the trier of fact.'" *Serrano v. City of New York*, 2022 U.S. Dist. LEXIS 120111, at *13 (S.D.N.Y. July 7, 2022) (quoting *Estate of Jaquez*, 104 F. Supp. 3d at 428). "The testimony must not be 'directed solely to lay matters which a jury a capable of understanding and deciding without the expert's help." *Id.* (quoting *Tardiff v. City of New York*, 344 F. Supp. 3d 579, 596 (S.D.N.Y. 2018)).

"In the context of contract claims, courts have held that an expert may not testify as to the parties' obligations under the contract or whether the contract was breached." *Valvetech*, 2023 U.S. Dist. LEXIS 88159, at *14 (quoting *Dominion Res. SVC, Inc. v. Alstom Power, Inc.*, 2018

U.S. Dist. LEXIS 133751 (D. Conn. Aug. 8, 2018)); *see also Pearlman v. Cablevision Sys. Corp.*, 2015 U.S. Dist. LEXIS 164410, at *24 (E.D.N.Y. Dec. 8, 2015) (striking opinions that "constitute [the expert's] interpretation of the contract rather than testimony regarding industry customs and practices). So, for example, this Court has precluded a technical expert from testifying about "his interpretation of the terms of, or the obligations arising under," parties' contracts, as well as opining on whether a party had breached its contractual obligations. *Id.* at *15. The Court drew a distinction between testimony in the technical expert's realm of expertise, which would assist the jury, and "offering an opinion on [the] ultimate legal issues." *Id.* at *15-16; *accord Shire Viropharma Inc. v. CLS Behring LLC*, 2021 U.S. Dist. LEXIS 61551, at *44 (D. Del. Mar. 31, 2021) (excluding opinions on the meaning and effect of a contractual provision because "[such an opinion—aside from exceeding the bounds of her expertise … by discussing the import of a contract—attempts to offer an impermissible legal conclusion").

B. **Rubbert cannot opine on the meaning of contractual terms, including his interpretation of the term "Product"**

In paragraphs 68-79 of his opening report, Mr. Rubbert offers opinions on interpretation of the term "Product" in the parties' Consulting Agreement. Ultimately, he concludes that "the term 'Product' is not limited to an archwire using the force prescriptions targeted to a specific malocclusion or targeting one of the three malocclusions listed in Section 5 of Exhibit A, Research Plan, (Rubbert Report ¶ 78), and that "'Product should be understood to refer to an archwire that targets at least one of the malocclusions listed in Section 5 of Exhibit A, including for an example that is capable of targeting all three of the malocclusions listed therein simultaneously" (*id.* ¶ 79).

6

Mr. Rubbert even goes through the drafting history of the Consulting Agreement and argues that it supports his interpretation. (*Id.* ¶¶ 76-77; *see also* Rubbert Tr. at 172:20-173:23.)[4]

"The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do [courts] permit expert testimony." *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 510 (2d Cir. 1977) (quoting *Loeb v. Hammond*, 407 F.2d 779 (7th Cir. 1969)). "An expert may testify about industry custom with respect to the inclusion of certain contract terms … or a common industry-specific trade meaning or usage of a word or term…. But an expert may not interpret a contract for the jury, nor may an expert testify about the meaning of legal terms." *Levinson v. Westport Nat'l Bank*, 2012 U.S. Dist. LEXIS 140909, at *13 (D. Conn. Sept. 28, 2012) (citations omitted). Mr. Rubbert's opinions on the meaning of contract terms are improper legal conclusions, they are not based on any technical expertise, and they would usurp the role of the Court and the jury. Accordingly, these opinions should be excluded.

C.   **Rubbert cannot opine on whether the SmartArch Universal is a "Product"**

Mr. Rubbert's opinion that the SmarArch Universal "falls within the scope of the term 'Product' as set forth in the Consulting Agreement" (Rubbert Report ¶ 18) is conclusory and would improperly substitute his judgment for that of the jury.

First and foremost, Mr. Rubbert never identified any force prescription targeting a high canine, any force prescription targeting rotated premolars, or any force prescription targeting tilted lateral incisors. (Rubbert Tr. at 36:19-39:22; *see also id.* at 166:19-22 (noting the absence of "any tabular or otherwise Newton force prescriptions" from his opening and rebuttal reports).) Instead, his opinions are based on characterizations in advertising materials, but not any technical analysis

---

[4] Excerpts of the transcript of the deposition of Ruedger Rubbert, taken July 7, 2021, are attached as Exhibit C to the Nonkes Declaration.

7

of force prescriptions. (Rubbert Report ¶¶ 83-91; Rubbert Tr. at 167:20-169:22.) In the absence of any technical analysis of force prescriptions, Mr. Rubbert's opinions about the meaning of marketing descriptions lie outside his expertise, are not based on sufficient facts or data, are not the result of reliable methods, and do reflect the reliable application of scientific principles and methods to the facts of the case. Instead, his opinions are wholly conclusory and will not be helpful to the jury.

To the extent that Mr. Rubbert's opinion is based on the SmartArch Universal archwire being capable of exerting the desired amount of force on a single tooth (*e.g.*, a canine), his opinion will not be helpful to the jury. The amount of force on a single tooth is a simple question of fact—it requires only comparison of two numbers. There is no complicated science or scientific calculation required, and this would not be the proper subject of expert testimony. It would also be contrary to his description, at his deposition, that the force prescription is a series of forces, not one single force. (Rubbert Tr. at 44:13-15.)[5]

Finally, whether the SmartArch Universal is a "Product" for which royalties are owed is an ultimate legal conclusion. "[T]estimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice." *Dominion Res. Servs. v. Alstom Power, Inc.*, 2018 U.S. Dist. LEXIS 133751, at *31 (D. Conn. Aug. 8, 2018) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294

---

[5] Loma Linda and Viecilli have also conceded that a "force prescription" is the set of forces at all teeth, not just a single tooth. (Loma Linda and Viecilli's Opposition to Smarter Alloys, Inc.'s Motion for Summary Judgment on Loma Linda's Fifth Cause of Action, dated Aug. 20, 2021, ECF No. 150 (filed under seal) at 18 ("[I]deal/load force proportions could be calculated for individual teeth …. [I]f it was known (or assumed) what specific force was needed on a given tooth …, then the force proportions could be used to calculate idealized forces for the remaining teeth. ***Such forces, taken as a composite, would be considered a 'force prescription'*** or 'force profile.'" (emphasis added)).)

(2d Cir. 1991)). Mr. Rubbert should not be allowed to simply tell the jury what conclusion to reach. *See Marx*, 550 F.2d at 510; *Estate of Jaquez*, 104 F. Supp. 3d at 432.

D. **Rubbert cannot opine on when the force prescription used in the SmartArch Universal was developed**

At deposition, Mr. Rubbert clearly testified—twice—that he has no opinion on when the force prescription used in the SmartArch Universal was developed.

> Q. Do you know whether the force prescription[] for the SmartArch Universal mandibular archwire was developed before the term of the consulting agreement?
>
> A. I believe, to my recollection, I have not provided opinion on that.
>
> Q. Do you have an opinion as to whether the force prescription used in the SmartArch Universal maxillary archwire was developed between the term of the consulting agreement
>
> A. I have not -- to my knowledge or to my recollection, I have not formed an opinion on it.

(Rubbert Tr. at 86:2-13; *see also id.* at 191:6-16.)

Because he did not disclose an opinion on that subject during discovery, Mr. Rubbert should be excluded from offering an opinion on it at trial.

E. **Other Opinions Rendered by Mr. Rubbert Should Be Excluded**

The Court granted Smarter Alloys summary judgment on Loma Linda's claims seeking to quiet title to the patent applications, and for rescission of Loma Linda and Dr. Viecilli's assignment of those applications to Smarter Alloys. (ECF No. 193 at 5 n.2; ECF No. 170 (R&R) at 30-33, 33-36.) Those claims were based on Loma Linda's theories that inventions in the '727 Application and the '338 Application were conceived before the term of the Consulting Agreement, and that the assignment of those applications was the result of mutual mistake. Because the Court has granted Smarter Alloys summary judgment dismissing Loma Linda's claims seeking to take back the patent applications, Rubbert's opinions on conception of the claimed inventions and

inventorship are no longer relevant. His opinions on conception of the claimed inventions (expressed in paragraphs 93-209 of his opening report) and on inventorship (expressed in paragraphs 210-249 of his opening report) are irrelevant, would confuse the issues, and waste time, and should be excluded pursuant to Rules 402 and 403.

## CONCLUSION

For the foregoing reasons, the cited portions of the testimony of Loma Linda's technical expert Ruedger Rubbert should be excluded under Fed. R. Evid. 402, 403 and/or 702.

Dated: May 28, 2024

                HARRIS BEACH PLLC

                By: */s/ Steven P. Nonkes*
                     James R. Muldoon
                     Harris Beach PLLC
                     333 W. Washington St., Suite 200
                     Syracuse, New York 13202
                     Telephone: (315) 214-2021
                     jmuldoon@harrisbeach.com

                     Laura W. Smalley
                     Steven P. Nonkes
                     Harris Beach PLLC
                     99 Garnsey Road
                     Pittsford, New York 14534
                     Telephone: (585) 419-8800
                     lsmalley@harrisbeach.com
                     snonkes@harrisbeach.com

                     *Attorneys for Defendant/Third-Party Plaintiff Smarter Alloys, Inc.*