IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOMA LINDA UNIVERSITY,<br><br>   Plaintiff,<br><br>v.<br><br>SMARTER ALLOYS INC.,<br><br>   Defendant / Third-Party Plaintiff,<br><br>v.<br><br>RODRIGO VIECILLI,<br><br>   Third-Party Defendant. | Civil Action No. 1:19-CV-00607-LJV |

**PLAINTIFF LOMA LINDA UNIVERSITY'S OPPOSITION TO DEFENDANT SMARTER ALLOYS INC.'S MOTION *IN LIMINE* TO EXCLUDE PORTIONS OF THE ANTICIPATED TESTIMONY OF JOANNE JOHNSON**

  Defendant Smarter Alloys Inc. ("Smarter Alloys") seeks to preclude Plaintiff Loma Linda University's ("LLU") expert, Joanne Johnson, from introducing several categories of testimony at the trial of this matter based on nothing more than its unsubstantiated conclusory contentions. Smarter Alloys does not contend Ms. Johnson's expert opinion is unfounded, speculative, or otherwise unsupported, but rather seeks to cut the credibility of her opinion off at the knees by preventing her from testifying regarding the factual underpinnings she considered in rendering her appropriate expert opinion. Rules 703 and 705 of the Federal Rules of Evidence clearly permit Ms. Johnson to testify regarding the facts she considered in reaching her expert opinion. As such, Smarter Alloys' motion fails to demonstrate such testimony should be precluded at trial.

**Argument**

Rule 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Moreover, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id.* In turn, Rule 705 provides "[u]nless the court orders otherwise, an expert may state an opinion—and give the reasons for it—without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination." Fed. R. Evid. 705. Here, Smarter Alloys does not challenge Ms. Johnson's expert opinion, but only her ability to testify regarding the basis for this opinion, in stark contrast to the language of Rules 703 and 705. Specifically, Smarter Alloys seeks to preclude Ms. Johnson from testifying: (1) that the SmartArch product was "developed using research conducted pursuant to the Consulting Agreement;" (2) about the Relevant Background considered in reaching her opinion; (3) about Ms. Johnson's understanding of the relevant products; (4) about the market overview used in reaching Ms. Johnson's opinion; (5) about the timeline of events considered in reaching Ms. Johnson's opinion; (6) about the reason Ms. Johnson needed to estimate sales data for certain years (i.e., information not provided in discovery); and (7) about why Ms. Johnson could not provide an opinion on Smarter Alloys' experts' opinions. Dkt. 215-1 at 1-2. As is demonstrated below, Smarter Alloys' motion is meritless and Ms. Johnson should be permitted to testify regarding all matters set forth in her expert report.

    **A.    Ms. Johnson's Opinion Is Founded on The Presumption that Smarter Alloys Breached the Subject Agreement.**

As is expressly stated at the beginning of Ms. Johnson's Expert Report, her opinion is premised on a finding by the jury that Smarter Alloys breached the subject agreement. Dkt. 219-

1 at 3 ("If SA is found to have breached its contract with LLU, it is my opinion that LLU has suffered lost royalty revenue from SA."). Given this presumption, and the plain language of the consulting agreement, the SmartArch product would necessarily be a product developed using research conducted pursuant to the Consulting Agreement if the jury finds for LLU at trial, as set forth in the Expert Report. *Id.* Therefore, Smarter Alloys' motion to preclude such testimony is truly a red herring—Ms. Johnson will not be providing scientific or substantive testimony demonstrating the SmartArch product falls within the ambit of the Consulting Agreement; but she must be permitted to testify that her opinion is premised on that assumption.

      **B.    Ms. Johnson Must Be Allowed to Testify Regarding the Factual Predicate for Her Opinion.**

Smarter Alloys primarily contends that Ms. Johnson should be precluded from testifying regarding anything other than her royalty calculations because—according to Smarter Alloys—most of Ms. Johnson's Expert Report purportedly does not relate to her opinion on the amount of royalties. Dkt. 215-1 at 4. However, beyond conclusory contentions, Smarter Alloys wholly fails to support this conclusion. Indeed, the factual predicate discussed in Ms. Johnson's Expert Report is necessary to her ultimate determination on damages considering Ms. Johnson must understand and analyze what is in dispute, the Consulting Agreement (which provides the basis for damages), the Manufacturing Process Agreements between SmartArch Inc. and Ormco (which provides the necessary data to compute damages), and Ormco's Sales Expectations in order to properly calculate the anticipated royalties resulting from Smarter Alloys' breach of the Consulting Agreement. Smarter Alloys itself recognizes the futility of its argument, contending in the alternative, "[t]o the extent that such details are relevant to the issues still to be decide by the jury . . . , they should be introduced into evidence by witnesses with personal knowledge and/or documentary evidence, not a paid mouthpiece." Dkt. 215-1 at 4.

Even this contention, however, falls flat. The law does not preclude Ms. Johnson from testifying regarding the factual predicate for her opinion to allow the jury to properly consider the reliability of and weight to be provided to her expert opinion. *See Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 404 (S.D.N.Y. 2013) ("Here, however, the factual assertions contained in [the expert's] report simply provide the foundation for [his] opinion as to the custom and practice in the industry in the situation he describes. At trial, the factual assertions he relies on obviously would have to be supported by admissible evidence and thus [the expert] could not present these facts to the jury for the purpose of describing what actually took place. Rather, [the expert] would present these facts as the predicate for his opinion testimony.").

Smarter Alloys' attempt to preclude Ms. Johnson from testifying regarding her understanding of the "Relevant Products," the market for the "Relevant Products," and Smarter Alloys' failure to turn over information concerning sales history for particular years is particularly puzzling. Smarter Alloys failed to turn over relevant information concerning the sales forecasts of the SmartArch product in discovery, making Ms. Johnson turn to general market forces to estimate SmartArch unit sales for FY2019-FY2024. Dkt. 219-1 at 9-10. As a result, Ms. Johnson must be able to discuss why she used general market forces as opposed to information within Smarter Alloys' control (that it failed to provide) to calculate LLU's damages. Ms. Johnson must also be permitted to discuss her understanding of the "Relevant Products" and the market for the "Relevant Products" as that is the manner in which she calculated part of LLU's damages. Precluding Ms. Johnson from discussing the economics of the relevant market for the SmartArch product would drastically impact the reliability and foundation of her expert opinion, something Smarter Alloys does not actually challenge in the instant motion.

Smarter Alloys' caselaw does not support its position and is easily distinguishable. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011), concerned the proper measure of damages stemming from the unauthorized use of certain software that comprised only a small portion of the overall product. There, the court held that it was improper for the jury to consider the revenue generated from the sale of the product as a whole in as much as the subject software was only a small part of the overall product. *Id.* at 1320. In other words, revenue for the product as a whole was not a proper measure of damages for the improper use of the subject software.

Here, however, Ms. Johnson's assessment of the market provides context to her calculation of the proper measure of damages for Smarter Alloys' breach of the Consulting Agreement. Indeed, Ms. Johnson references the "Market Overview" section in her calculation of LLU's Lost Royalty Revenues. Dkt. 219-1 at 25 ("[G]iven the impact of COVID on 2020 financials (as discussed in Section 7.1 ["Market Overview"]), utilizing the FY 2020 gross margin for the entire period is likely to understate the gross profits SA earned on the SmartArch Universal archwires."). Smarter Alloys does not take issue with this method, but solely contends the numbers discussed are prejudicial because of their size. But at no point does Ms. Johnson state the numbers used to calculate the growth of the overall market are in any way tied to the sales of the SmartArch product itself—only its relative trends in the market. Accordingly, Smarter Alloys' prejudice concerns are entirely unfounded.

Finally, Smarter Alloys surmises, without any discussion, that Ms. Johnson's review of the "Relevant Background," which includes a discussion of the parties' dispute, the Consulting Agreement, the Manufacturing Process Agreements between SmartArch Inc. and Ormco, and Ormco's Sales Expectations, is simply a reiteration of LLU's allegations. Dkt. 215 at 5. However, such discussion is directly tied to depositions and documents exchanged in discovery, not LLU's

Complaint. Smarter Alloys' "expert" Dr. Kuntz has disclosed that he "intend[s] to provide expert testimony" on several topics (Dkt. 209-3, Kuntz Disclosure, ¶ 2), which are the very topics Ms. Johnson discusses in her "Relevant Background" and "Relevant Products" sections, including the Consulting Agreement, the definition of "Product" in the Consulting Agreement, and Smarter Alloys' dealings with Ormco (Dkt. 219-1 at 5-10). Similarly, Dr. Kuntz's disclosure includes more than a page discussing the Consulting Agreement. Dkt. 209-3, Kuntz Disclosure, ¶¶ 36-46. Mr. Bain also states his understanding of Smarter Alloys' relationship with Ormco since March 2019, which Ms. Johnson also discusses in her "Relevant Products" section. Dkt. 209-5, Bain Disclosure, ¶ 18; Dkt. 219-1 at 13. As such, Ms. Johnson's background sections are a necessary foundation for her testimony and serve as contrast to what Smarter Alloys' "experts" intend to testify to at trial. Moreover, as noted above, this discussion forms the factual predicate for Ms. Johnson's opinion and, as such, must be considered with her overall opinion on damages.

Smarter Alloys' citation to *In re Ampal-American Israel Corp.*, 12-cv-13689, 2020 WL 2529337 (Bankr. S.D.N.Y. May 14, 2020), is entirely inapposite. Dkt. 215-1 at 5. There, the "Factual Background" presented in the expert report plainly summarized the trustee's allegations in the complaint. *Id.* at *4. Here, however, Ms. Johnson summarizes the facts she considered necessary to her understanding of the pertinent agreements and sales history used to calculate LLU's damages, with citations to documents and depositions exchanged in discovery. Dkt. 219-1 at 23-26. As such, Smarter Alloys has failed to demonstrate that Ms. Johnson's testimony should be limited in any way.

  **C. Ms. Johnson Should Be Permitted to Comment on Smarter Alloys' Experts' Opinions.**

Smarter Alloys seeks to preclude Ms. Johnson from testifying regarding its so-called "experts'" opinions on damages, contending Ms. Johnson's opinion tries "to articulate the legal

standard for an expert disclosure." Dkt. 215-1 at 5-6. However, Ms. Johnson opines, and Smarter Alloys does not dispute, that its "experts" failed to adequately disclose their "expert" opinions by failing to disclose the principles and methodology utilized as well as the facts or data that form the basis for their opinions. Dkt. 219-1 at 26. Furthermore, Smarter Alloys claims that "Mr. Kuntz and Mr. Bain are employees of Smarter Alloys, not retained experts." Dkt. 215-1 at 6. However, both Mr. Kuntz and Mr. Bain state in their disclosure that they "intend to provide expert testimony" on a laundry list of topics, as well as stating that they "intend to testify in this case as an expert witness," highlighting the contradictory nature of Smarter Alloys' argument. Dkt. 209-3, Kuntz Disclosure, ¶¶ 2, 5; Dkt. 209-5, Bain Disclosure, ¶¶ 2, 4.

It is anticipated Smarter Alloys' "experts" will be asked to opine on Ms. Johnson's opinions. It would be extraordinarily prejudicial to LLU if its damages expert could not explain the reason for not being able to substantively respond to Smarter Alloys' purported "experts." Smarter Alloys elected not to disclose any underlying facts, data, or explanation of its methodology when disclosing its "experts," and LLU's expert is entitled to explain that election in response to any testimony provided by Smarter Alloys' "experts" at trial.

## CONCLUSION

For these reasons, Smarter Alloys' motion to preclude portions of the testimony of Joanne Johnson should be denied in its entirety.

Dated: June 4, 2024

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

By: /s/    Jessica L. Copeland
Jessica L. Copeland
Avant Building – Suite 900
200 Delaware Avenue

7

Buffalo, New York 14202
Telephone: (716) 416-7034
jcopeland@bsk.com

Barry Herman (*pro hac vice*)
William Hubbard (*pro hac vice*)
Julie Giardina (*pro hac vice*)
WOMBLE BOND DICKINSON (US) LLP
100 Light Street, 26th Floor
 Baltimore, MD 21202
Telephone: (410) 545-5830
Barry.Herman@wbd-us.com
Will.Hubbard@wbd-us.com
Julie.Giardina@wbd-us.com

Jeffrey Whittle (*pro hac vice*)
Joshua Davis (*pro hac vice*)
WOMBLE BOND DICKINSON (US) LLP
811 Main Street, Suite 3130
Houston, TX, US 77002
Telephone: (346) 998-7801
Jeffrey.Whittle@wbd-us.com
Joshua.P.Davis@wbd-us.com

*Attorneys for Plaintiff Loma Linda University and Third-Party Defendant Rodrigo Viecilli*