# CONSULTING AGREEMENT

This Consulting Agreement ("Agreement") is entered into and effective this 10th day of December, 2014 ("Effective Date") by and between Smarter Alloys Inc. (hereinafter referred to as "Company"), a corporation, having offices at 75 Bathurst Drive, Waterloo, Ontario N2V 1N2 and Loma Linda University (hereinafter referred to as "Consultant"), a California nonprofit religious corporation having corporate offices at 11145 Anderson Street, Loma Linda University, Loma Linda, California 92354.

WHEREAS, Company desires to retain Consultant for consulting services as defined herein;

WHEREAS, Consultant wishes to conduct research and consult with Company;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in consideration of the following mutual promises and covenants, the parties hereto agree as follows:

I. CONSULTANT SERVICES

A. During the term of this Agreement, Consultant will provide consulting services ("Services") to Company generally as described in Exhibit A attached to this Agreement. Consultant's faculty member and employee Dr. Rodrigo Viecilli, DDS, PhD, (hereinafter referred to as "Principal Investigator" or "PI") will conduct research generally as described in Exhibit A. The description of the Services can be changed by the parties as circumstances reasonably require by mutual agreement in writing between the parties.

B. Consultant may engage any employee, individual, or entity to assist Consultant in connection with the Services with the express written consent of Company. Any such employee, individual, or entity for which consent is granted shall agree in writing to be bound by the terms of this Agreement, including but not limited to, the provisions of the Confidentiality Agreement, as defined below.

II. COMPENSATION AND REIMBURSEMENT

In consideration for the Services to be provided by Consultant and for complying with all of its other obligations hereunder, Company will compensate Consultant and reimburse Consultant for certain expenses as described in Exhibit B.

III. CONFIDENTIAL INFORMATION

Consultant has signed, or hereby agrees to sign upon request, a Confidential Disclosure Agreement substantially in the form attached hereto as Exhibit C ("Confidentiality Agreement"), prior to or on the date on which Consultant's consulting relationship with Company commences. This Agreement will control with regard to any conflict between the terms of this Agreement and the Confidentiality Agreement. For purposes of this Agreement, "Confidential Information" shall mean all trade secrets, proprietary information, know how, and confidential information relating to Company's business, products, services, customers, accounts, consultants, and suppliers, etc.

IV. INTELLECTUAL PROPERTY

A. Company grants a nonexclusive, royalty free, perpetual, worldwide license, with the right to sublicense, to Consultant and Consultant's affiliates with respect to the Services or any of the Property (as defined below) to use, make, import, have used, have made, or have imported the Services or any of the Property in non-commercial research and teaching activities. The Property relating to the Services created, authored, or conceived between the Effective Date and the termination date of this Agreement shall be the

-1-

sole property of Company. The parties grant no right, title, interest, or license to the other party in Property existing prior to Effective Date of this Agreement. All Property, including improvements, suggestions, comments, feedback, modifications, developments, or derivative works relating thereto, created, authored, or conceived after termination this Agreement belong to the party that developed the Property after termination of this Agreement.

    B.    For purposes of this Agreement, "Property" shall mean the Intellectual Property relating to the Services or otherwise arising under this Agreement.

    C.    As used in this Agreement, "Intellectual Property" or "IP" shall mean any intellectual property right recognized by law, such as (i) inventions, ideas, concepts, designs, materials, mask works, methods or processes, and the like, whether or not patentable; (ii) Confidential Information; (iii) works of authorship and copyrightable subject matter, whether or not the copyright is registered; (iv) improvements, modifications, developments, or derivative works relating to any of the IP relating to the Services created, authored, or conceived between the Effective Date and the termination date of this Agreement; (v) trademarks, service marks, trade names, domain names, or trade dress; and (vi) worldwide intellectual property rights and other proprietary rights relating to any of the foregoing, including patents, patent applications, international patent rights and rights of priority, copyrights and copyright registrations, trademark rights and trademark registrations, and all related certifications, applications and registrations of such intellectual property rights.

V.    <u>TERM AND TERMINATION</u>

    A.    The term of this Agreement shall commence as of the Effective Date and shall terminate on December 31, 2015, unless terminated sooner in accordance with the terms and provisions of this Agreement; provided, however, either party may terminate this Agreement upon thirty (30) days prior written notice to the other party. Except as otherwise provided in this Agreement, the Parties may extend the term of this Agreement (subject to the Termination sections herein), on the same terms and conditions as in effect just before the then-current end of the term, for periods of six (6) months each by mutual agreement in writing between the parties.

    B.    In the event of any breach of this Agreement, the party alleging such breach shall give written notice of the breach to the breaching party and shall specify a reasonable period of time within which the breaching party is to cure the breach. In the event that said breach has not been cured within the specified time, the first party may terminate this Agreement upon written notice to the breaching party. Termination shall be effective upon receipt of the written notice.

    C.    If this Agreement is terminated for any reason, Company will be obligated to pay all costs incurred prior to the termination date. Further, Company will be obligated to continue royalty payments in accordance with Exhibit B.

VI.    <u>REPRESENTATIONS AND WARRANTIES</u>

    A.    Consultant hereby represents and warrants to Company, to the best of Consultant's knowledge as of the Effective Date, that Consultant has, and will continue to have, the necessary expertise, personnel, equipment, materials, and immediate financial means to fulfill its obligations as provided herein.

    B.    Company hereby represents and warrants to Consultant that Company agrees not to use or disclose to Consultant, or induce Consultant to use, any confidential or proprietary information, material or rights of any third party.

    C.    Consultant hereby represents and warrants to Company, to the best of Consultant's knowledge as of the Effective Date, that Consultant has the right to assign to Company, free and clear of

CONFIDENTIAL
LLU0001432

any liens or encumbrances, all right, title and interest which it has or may obtain in Property, as provided in this Agreement.

VII.  INDEMNIFICATION/INSURANCE

The parties hereby agree to indemnify, defend, and hold the other party harmless from and against any and all claims, liability, loss, cost, damage, or expense (including reasonable attorneys' fees, expert witness fees, legal expenses, and costs) arising from or in any manner connected with the breach of any representation, warranty, or covenant contained in this Agreement. Company hereby agrees to indemnify, defend, and hold Consultant harmless from and against any and all claims, liability, loss, cost, damage, or expense (including reasonable attorneys' fees, expert witness fees, legal expenses, and costs) arising from or in any manner connected with the operation of Company's business as it relates to this Agreement.

VIII.  GENERAL PROVISIONS

A.  Consultant's relationship with Company will be that of an independent contractor and not that of an employee. Consultant will not be eligible for any employee benefits, nor will Company make deductions from payments made to Consultant for taxes, all of which will be Consultant's responsibility. Consultant will have no authority to enter into contracts that bind Company or create obligations on the part of Company without the prior written authorization of Company. The parties further agree that nothing in this Agreement creates the relationship of partnership, joint venture, sales agency, or principal and agent.

B.  The parties acknowledge that there is no adequate remedy at law for the other party's failure to comply with the terms of this Agreement. Accordingly, in the event a party fails to comply with these terms, the parties acknowledge and agree that the other party shall have the right, without prejudice to any other rights or remedies available to the other party, to remedy any breach of this Agreement through equitable relief by way of a temporary restraining order or injunction, and such other alternative relief as may be appropriate, without the necessity of posting any bond or surety.

C.  No course of conduct or dealing between the parties shall act as a modification or waiver of any provision of this Agreement, and only a modification or waiver which is contained in a written agreement signed by both parties shall be effective. No failure or delay on the part of either party hereto in enforcing any rights or remedies hereunder, and no partial or single exercise thereof, shall constitute a waiver of any such rights or remedies unless contained in a written agreement signed by both parties.

D.  In the event that any legal action becomes necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled, in addition to its court costs, to such reasonable attorneys' fees, expert witness fees and legal expenses as shall be fixed by a court of competent jurisdiction. This Agreement shall be governed and construed in accordance with the laws of the State of New York, U.S.A., without regard to conflicts of law provisions. The exclusive jurisdiction for any legal proceeding regarding this Agreement shall be in the in U. S. District Court of the Western District of New York, and the parties expressly agree that jurisdiction and venue are proper in said courts.

E.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together constitute one and the same instrument, and any reproduction of this Agreement by reasonable means shall also be deemed an original. Furthermore, any exhibits attached hereto, or any documents clearly intended to be attached to this Agreement, whether or not they are actually attached, are deemed attached hereto and made a part hereof and are incorporated herein by this reference. The parties agree to execute such further documents and agreements, and to take such further action, as may reasonably be necessary to carry out the intent of this Agreement.

F.  If any provision of this Agreement should be held to be void or unenforceable, in whole or in part, such provision or part thereof shall be treated as severable, leaving valid the remainder of this Agreement and remaining provision(s) shall be modified so as to be enforceable to the fullest extent allowed

CONFIDENTIAL
LLU0001433

by law. Termination of this Agreement shall not itself cause the termination of the Confidentiality Agreement.

G.  This Agreement, including all exhibits attached hereto, together with the Confidentiality Agreement, contain the entire understanding between the parties with respect to the subject matter hereof, and there are no representations, warranties, promises, or undertakings other than those contained herein. This Agreement supersedes and cancels all previous agreements between the parties, other than the Confidentiality Agreement. There are no third party beneficiaries.

H.  Each party and the individuals signatory hereto represent and warrant to the other that they are duly authorized to enter into this Agreement on behalf of each respective party and to bind the parties hereto.

IN WITNESS WHEREOF, the parties have executed this Agreement, and its effectiveness shall date from the Effective Date written above. If no Effective Date is provided above, the Effective Date shall be the date of the latest signature below.

Dated: June 17, 2015

SMARTER ALLOYS INC.
By: _____
Printed Name: Ibraheem Khan
Title: CEO

Dated: 6-5-15

LOMA LINDA UNIVERSITY
By: _____
Printed Name: Anthony J. Zuccarelli, Ph.D.
Title: Associate Vice President for Research Affairs

Acknowledgment by Principal Investigator:

_____   6/5/2015
Rodrigo Viecilli, DDS, Ph.D.   Date

15007

-4-

CONFIDENTIAL                                                                                                         LLU0001434

## EXHIBITS

Exhibit A - Description Of Consulting Services

Exhibit B - Compensation And Reimbursement

Exhibit C - Confidentiality Agreement

CONFIDENTIAL

LLU0001435

EXHIBIT A

## DESCRIPTION OF CONSULTING SERVICES

Company will fund research and development activities to be performed by Principal Investigator as a faculty member and employee of Consultant. The research and development activities will be directed to multi-force archwire prescriptions targeting specific classes of commonly observed malocclusions.

### Background

***Clinical problem:*** A severe malocclusion may often be present on a specific part of the dental arch, while other areas of the dental arch have mild malocclusions. An orthodontist frequently needs to choose a single low stiffness archwire that will attack the severe malocclusion area, thus limiting efficiency in other areas of the arch.

***Potential Solution:*** Provide the orthodontist with the ability to decide the stiffness of the alignment arch wire in specific areas of the arch. Several pre-calculated stiffness modifications targeting specific malocclusions need to be established through research. Up to five times decreased stiffness may be achieved with Smarter Alloys's Multiple Memory Material (MMM) technology. The Principal Investigator will calculate possible wire stiffness changes that may keep load (force & moment) levels within reasonable, desirable, or predetermined levels. The PI will start by exploring the issue of severely displaced canines (a common clinical situation) while initializing investigations on rotated premolars and tilted lateral incisors.

***Clinical advantages of using MMM programmed archwire:***
1. Controlled load magnitude: Better control of load levels for the target tooth using Finite Element Analysis (FEA) based calculations.
2. Treatment Time: An orthodontist frequently needs to use a lower stiffness arch wire because of severity of malocclusion in a specific area. In such cases, a second alignment archwire may be needed to correct malocclusions of larger teeth, such as molars and premolars. MMM technology may allow an optimal approach of both the severe and mild to moderate malocclusions at the same time, which could potentially reduce alignment (treatment time) by a few months.
3. Chair Time: The orthodontist will reduce arch wire changes to address specific alignment problems in the arch.
4. Built-in Anchorage Strategy: Clinicians often use a "piggy-back"/2-archwire approach to minimize movement on adjacent teeth (adjacent to the severe malocclusion). This consists of a stainless steel archwire connecting anchorage teeth, with the addition of a wire to target the severe malocclusion area. MMM technology may allow this to be done in a single higher stiffness Nickel Titanium (NiTi) archwire. Ideal diameters and stiffness need to be researched with, for example, FEA.
5. Ease of Clinical Insertion: The programmed low stiffness in strategic locations of the archwire may allow for ease of ligation and may decrease change of bonding failures.

### Research Plan

Using FEA, the PI will explore changes in stiffness of NiTi wires for various malocclusion situations and resulting effects on forces. The change in stiffness of NiTi wires will be researched in relation to:
1. Different diameters and/or cross-sections;
2. Different interbracket distances;
3. Different vertical discrepancies;
4. Initial width of MMM zone from premolar to lateral incisor before wire insertion; and
5. Different interbracket distances using FEA to mimic:
    a. An impacted or high canine;
    b. Rotated premolars; or

-6-

CONFIDENTIAL
LLU0001436

c. Tilted lateral incisors.

**Deliverables**

1. Keynote address at the American Association of Orthodontists annual meeting to be held in May 2015: The invited talk will feature discussion of the research results, including: strengths, weaknesses, and limitations of existing treatment options (e.g., single force, multi-force (Bioforce, Gradient 3), shaped wires (Insignia, Sure Smile)); need for high spatial force resolution programmable technology to match local stiffness with IBD and PDL optimized force; MMM technology and capability for high resolution spatial force tuning; case study for high canine; potential for future work, clinical results (SEAR?).
2. Advice Smarter Alloys on booth set up and clinical demonstrations for American Association of Orthodontists annual meeting to be held in May 2015.
3. Publications:
    a. Determination of Resistance (Anchorage) numbers for teeth. Publication plan includes the relative resistance of each tooth movement (e.g., the factors by which a force or moment translate into stress in the PDL (periodontal ligament) for each tooth.
    b. Effects of interbracket distance, friction coefficient, and wire diameter in a three bracket alignment scenario with NiTi wires. Plan includes demonstrating how each of these factors play together to determine the outcome of tooth alignment in terms of actual alignment forces and space opening forces. Plan includes demonstrating how the effect of interbracket distance and wire diameter in NiTi (hysteresis) is different from Stainless Steel (a linear material). This publication may have to be broken into two parts.
    c. Report summarizing experimental results and force prescriptions for the three malocclusion scenarios set out in Section 5 of the Research Plan.

CONFIDENTIAL

LLU0001437

EXHIBIT B

## COMPENSATION AND REIMBURSEMENT

In compensation for the Services to be performed, Company shall pay a total of $15,000 US to Consultant and $16,000 directly to the Principal Investigator, Dr. Rodrigo Viecilli, per the Payment Schedule below.

**Payment Schedule**

To Principal Investigator:
  Payment 1 $6,000.00 upon execution of this Consulting Agreement
  Payment 2 $3,333.00 on June 30, 2015
  Payment 3 $3,333.00 on September 30, 2015
  Payment 4 $3,334.00 on December 30, 2015

To Loma Linda University:
  Payment 1 $5,000.00 on June 30, 2015
  Payment 2 $5,000.00 on September 30, 2015
  Payment 3 $5,000.00 on December 30, 2015

**Royalty**
Should Company commercialize a Product (defined below), Company shall pay a royalty of 4% of gross profits earned on the sale of any Products. The royalty payments shall be distributed in accordance with Consultant's Policy governing distribution of such payments.

**Product**
Product means an archwire that uses the force prescriptions targeting the three malocclusions set out in Section 5 of Exhibit A, Research Plan.

**Term**
The royalty (defined above) shall be paid during a term which shall expire with the expiry of the last issued patent (US or international) claiming the Product, or upon the execution of the Buyout (defined below).

**Buyout**
Company, at its option, may elect at any time to terminate any future royalty payments with a one-time royalty buyout of $1,500,000 US less any royalties already paid per the Royalty (defined above).

**Intellectual Property Costs**
Should Company, in its sole discretion, decide to pursue patent protection on the Intellectual Property, Company shall pay all patent related costs for filing, prosecution, and maintenance. Consultant shall endeavor to make Principal Investigator available to reasonably assist Company in securing any Intellectual Property protection. Company shall reimburse Consultant and Principal Investigator any reasonable out-of-pocket expenses incurred in securing Intellectual Property protection if the out-of-pocket expenses are pre-approved by Company.

CONFIDENTIAL                                                                                                    LLU0001438

<u>EXHIBIT C</u>

## CONFIDENTIAL DISCLOSURE AGREEMENT

This Confidential Disclosure Agreement ("Agreement") is effective as of this 10th day of December, 2014, and is between Smarter Alloys Inc. (hereinafter referred to as "Discloser"), a corporation having offices at 75 Bathurst Drive, Waterloo, Ontario N2V 1N2, and Loma Linda University (hereinafter referred to as "Recipient"), a California nonprofit religious corporation having corporate offices at 11145 Anderson Street, Loma Linda University, Loma Linda, California 92354.

WHEREAS Discloser has certain technical information relating generally to material science, which it is desirous of disclosing to Recipient in order to allow Recipient to conduct orthodontic research to address malocclusions.

NOW, THEREFORE, in consideration of the above premises and the mutual promises and covenants herein contained, the parties agree as follows:

1. Discloser shall disclose to Recipient its technical information in sufficient detail to enable Recipient to evaluate such technology. Any confidential information so provided by Discloser shall be in written or other tangible form and clearly marked "Confidential," or be revealed orally, designated as confidential orally when revealed, and confirmed within thirty (30) days in writing as confidential (collectively, "Information").

2. For a period of five (5) years from the effective date hereof, Recipient agrees not to disclose the Information to others.

3. It is agreed that the obligations of confidentiality and non-use imposed hereunder will not apply in any way with respect to any of the following:

   a. Information which is or becomes a part of the public domain through no fault of Recipient;
   b. Information which was already known to or in the possession of Recipient at the time of disclosure;
   c. Information which is inherently disclosed by the Recipient in the use, distribution, or marketing or any product or service;
   d. Information which is subsequently disclosed to Recipient by third parties having a right to do so;
   e. Information which is independently developed by Recipient;
   f. Information which is not treated as confidential by Discloser; or
   g. Information which Recipient is compelled by law to disclose, provided that the Recipient gives Discloser reasonable prior notice to allow Discloser an opportunity to obtain a protective order.

4. Discloser hereby represents and warrants that it has the right to disclose the technical information described above to Recipient pursuant to this Agreement and that the receipt or use of the Information by Recipient does not and will not infringe or violate any third party rights. Further, Discloser agrees to indemnify, defend and hold Recipient harmless from any and all liabilities, claims, obligations, suits, judgments and expenses whatsoever, including court costs, legal expenses, expert witness fees and attorneys' fees, which Recipient may incur or which may be asserted against Recipient and which arise or occur with respect to: (i) Recipient's receipt or use of the Information in accordance with this Agreement; or (ii) the breach by Discloser of any of the foregoing representations or warranties.

5. This Agreement does not obligate either party to perform any work or project for the other or to enter into any license or business arrangement with the other, nor does it limit either Recipient

CONFIDENTIAL                                                                                                                                        LLU0001439

or Discloser from developing, manufacturing, or marketing products or services which may be competitive with those of the other.

6. In the event that any legal action becomes necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled, in addition to its court costs, to such reasonable attorneys' fees, expert witness fees and legal expenses as shall be fixed by a court of competent jurisdiction. This Agreement shall be governed and construed in accordance with the laws of the State of California, U.S.A., without regard to conflicts of law provisions. The exclusive jurisdiction for any legal proceeding regarding this Agreement shall be in the in U.S. District Court of the Central District of California, Riverside Court or the Superior Court of the County of San Bernardino, State of California, U.S.A., and the parties expressly agree that jurisdiction and venue are proper in said courts.

7. This Agreement shall continue from the effective date hereof until the termination of this Consulting Agreement, and shall then terminate; provided, however, that either party may terminate this Agreement sooner upon thirty (30) days written notice to the other party.

8. This Agreement contains the entire understanding and agreement of the parties with respect to the subject matter hereof, and there are no representations, warranties promises or undertakings other than those contained herein. As to the subject matter hereof, this Agreement supersedes and cancels all previous agreements between the parties hereto. No delay or failure to act, and no course of conduct or dealing between the parties, shall act as a modification or waiver of any provision of this Agreement, and only a modification or waiver which is contained in a written agreement signed by both parties shall be effective.

9. The parties hereby agree that no agency, joint venture, partnership, or employee/employer relationship is created hereby, and that neither party shall incur any obligation in the name of the other party without that other party's prior written consent.

10. Any reproduction of this Agreement by reasonable means will be considered an original of this Agreement. No other party shall be considered a third party beneficiary of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, and its effectiveness shall date from the earlier of the date first written above or the date of the latest signature below.

**SMARTER ALLOYS INC.**

Dated: 6-17-15

By: _____

Printed Name: Ibraheem Khan

Title: CEO

**LOMA LINDA UNIVERSITY**

Dated: 6-15-15

By: _____

Printed Name: Anthony J. Zuccarelli, PhD

Title: Associate Vice President for Research Affairs

-10-

CONFIDENTIAL                                                                                                                    LLU0001440