**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

LOMA LINDA UNIVERSITY,

        Plaintiff,

v.

SMARTER ALLOYS INC.,

        Defendant / Third-Party Plaintiff,

v.

RODRIGO VIECILLI,

        Third-Party Defendant.

Civil Action No. 1:19-CV-00607-LJV

**PLAINTIFF LOMA LINDA UNIVERSITY'S OPPOSITION TO
DEFENDANT SMARTER ALLOYS INC.'S SECOND MOTION *IN LIMINE* TO
EXCLUDE EVIDENCE OF FUTURE DAMAGES**

Defendant Smarter Alloys Inc.'s ("Smarter Alloys") second attack on Plaintiff Loma Linda University's ("LLU") expert Joanne Johnson is misleading and disingenuous at best. Smarter Alloys tries to categorize LLU's contract damages as "future damages" that Smarter Alloys purportedly had no knowledge of prior to LLU's filing of its verdict form. Smarter Alloys' false narrative ignores the history of the parties' dispute, predating this lawsuit. For the reasons explained below, Smarter Alloys' motion (Dkt. 241) should be denied with prejudice.

**ARGUMENT**

**I.**     **Smarter Alloys Has Been On Notice of LLU's Damages Theory Since Before This Litigation Commenced.**

Pursuant to the Consulting Agreement and consistent with LLU's Rule 26 disclosures (Initial and Expert), LLU is entitled to ongoing royalty payments for the sale of "any Products" commercialized as a result of the Consulting Agreement. Smarter Alloys' feigned surprise at

1

LLU's verdict form rings hollow when viewed in context of LLU's Rule 26 disclosures beginning

October 2020 through March 2024. Indeed, Smarter Alloys has been on notice of LLU's sought-

after damages even before LLU's Initial Disclosures when Dr. Samardzija tried to enforce the

Consulting Agreement pre-litigation. In a March 6, 2019, email from Dr. Samardzija to Dr. Kuntz,

Dr. Samardzija states:

> I was just informed that Smarter Alloys has been selling products
> developed from technology obtained from LLUH for the past two
> years. . . . Had Smarter Alloys informed LLUH that it had begun to
> sell the product, Smarter Alloy would have had the choice to either
> pay LLUH an ongoing royalty of 4% or to pay us a lump sum of
> $1.5M. Being that Smarter Alloy has failed to exercise the last
> option, it is now left with the option of paying LLUH an ongoing
> royalty of 4%. Moreover, because of its failure to be transparent,
> we should discuss LLUH's ability to conduct yearly audits of its
> sales.

*See* Ex. 1, DTX-268.

## II.    Smarter Alloys Obtained Discovery On LLU's Claim for Ongoing Royalties and Therefore Has Not Been Prejudiced.

Smarter Alloys contends it has been "prejudiced by this late request" (Dkt. 241-5 at 2);

however Smarter Alloys has been on notice and reminded of LLU's intent to recover ongoing

royalties since at least March 2019. LLU's complaint filed May 10, 2019, clearly asserted LLU's

intent to seek ongoing royalty payments or its entitlement to a lump sum buyout, per the terms of

the agreement. *See* Dkt. 1 ¶¶ 57, 58. On October 29, 2020, LLU reiterated its damages theory

related to its breach of contract claim in its Initial Disclosures. *See* Dkt. 241-2. During Expert

Discovery, LLU served Smarter Alloys with its Rule 26 Expert Disclosure offered by Andrew

Carter on March 31, 2021. *See* Ex. 2. In his disclosure, Mr. Carter explained that:

> Under the Consulting Agreement, SA is obligated to pay LLU either royalty fees or a one-time buyout upon commercialization of a product as defined in the Consulting Agreement. As SA failed to pay LLU either royalties or the buyout upon commercialization of the SmartArch product, LLU has suffered ***and will continue to suffer damages*** as a result of that failure to pay.

*Id*. at 6 (emphasis added). Notably, LLU's Supplemental Damages Expert Report, provided by Joanne Johnson on March 26, 2024, provides the same opinion. *See* Dkt. 219-1 at 5.

Smarter Alloys took the deposition of Mr. Carter on June 17, 2021 (three years ago), and elicited testimony on LLU's damages theory and calculations, including Mr. Carter's expert opinion on LLU's continued suffering of damages. Below is an excerpt of Smarter Alloys' deposition inquiry:

> Q:    And feel free to look at it, but my first question is going to be that it's your opinion that the royalties for breach of contract are from between $11,396 and $28,316, is that correct?
>
> A:    It's correct with the caveat of that's based on the produced information. Obviously, if, you know, time goes on and more sales occur, then that number would be expected to go up, just so we are clear on that. But based on what's been produced, that is my opinion, yes.

Ex. 3 at 52:3-14.

It is most convenient now, having spent five years litigating over unpaid royalties, for Smarter Alloys to claim LLU's damages theory as a new revelation. LLU timely disclosed its damages theory and calculations in compliance with Rule 26 and Smarter Alloys obtained significant discovery on LLU's damages disclosure. Compounding Smarter Alloys' coy intimation of shock and awe at LLU's damages computation is the fact that Smarter Alloys continues to supplement its sales data for purposes of updating LLU's damages calculation. *See* Ex. 4. LLU is entitled to seek ongoing royalties for the sale of any product under the Consulting Agreement and therefore its damages expert should not be precluded from offering her opinion of same at trial.

Notwithstanding LLU's timely and sufficient disclosure of damages, leaving no prejudice argument for Smarter Alloys to assert, case law supports the concept of ongoing royalties on products developed under this type of agreement. Indeed, courts regularly uphold breach of contract claims for future royalties where those royalties are calculable. *See Oscar de la Renta, Ltd. v. Mulberry Thai Silks, Inc.*, No. 08 Civ. 4341(RJS), 2009 WL 1054830 (S.D.N.Y. Apr. 17, 2009) (awarding future royalties as liquidated damages by calculating the minimum royalty the plaintiff stood to earn). While Smarter Alloys contends that the November 2025 termination of the Amended Manufacturing Process Agreement creates speculation as to whether the agreement will be renewed, this is a red herring. *See* Dkt. 241-5 at 4. It is undisputed that LLU would be entitled to 4% royalty on gross profits of any Product sold. Mathematical calculation of 4% royalty on actual units sold is not speculative—it is a straightforward calculation rooted in concrete sales data. A jury award could compel Smarter Alloys to pay the agreed royalty to the extent sales actually occur, removing all speculation. *Cummins-Allison Corp. v. SBM Co., Ltd.*, 584 F. Supp. 2d 916, 917 (E.D. Tex. 2008) ("[I]n a traditional lost profits case, the jurors must determine what sales are reasonably likely to occur in the future, analyze the expected profit margin, and then reduce the total to present value. Calculation of a future royalty rate is less speculative, because it will be applied to sales as, and if, they actually occur. There is no need to go through a complex reduction to present value analysis."); *see also BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1219 (Fed. Cir. 1993) (distinguishing between potentially speculative lost sales profits and reasonably calculable lost royalties).

### III. LLU's Damages Expert Can Opine on Market Trends To Support Her Expert Opinion on Damages at Trial.

As a threshold matter, and as stated in LLU's response to Smarter Alloys' initial motion *in limine* directed at Ms. Johnson, Smarter Alloys refused to produce documents requested by LLU

in discovery, specifically seeking information related to the anticipated growth of sales of the SmartArch Product, including business plans, projects, forecasts, and budgets. In correspondence with Smarter Alloys' Counsel, Smarter Alloys unilaterally took the position that the information sought by LLU was not proportional to the needs of the case or the damages sought and refused to produce documents or information responsive to LLU's request—that it previously represented it would produce. *See* Ex. 4; Ex. 5; Ex. 6. Having no discovery from Smarter Alloys on this pertinent issue, LLU's expert properly conducted her own market research and provided her well-founded expert opinion in LLU's supplemental disclosure. Notably, despite LLU offering Smarter Alloys to depose Ms. Johnson, providing Smarter Alloys the opportunity to challenge Ms. Johnson's opinions, Smarter Alloys declined the opportunity. At bottom, Smarter Alloys should not be permitted to abdicate (unilaterally) its discovery obligations and then ask the Court to preclude LLU from presenting evidence it was forced to obtain independently as a result of Smarter Alloys' actions—*i.e.*, it should not be allowed to have its cake and eat it too.

Moreover, Smarter Alloys wrongly claims that Ms. Johnson does not consider "general market forces" in her royalty opinion. Dkt. 241-5 at 5-6. As discussed in her report, Ms. Johnson considers several available gross profit margin data points to calculate the range of royalties due under the Consulting Agreement by multiplying the product revenue by the different gross profit margins. Dkt. 219-1 at 25. As part of that analysis, Ms. Johnson discusses the deficiencies in the available gross margin data as provided by Smarter Alloys and relies on her assessment of the market in Section 7 of her report to provide context for whether certain gross margin data points are likely understated. *Id.* Indeed, as outlined in LLU's response to SA's earlier motion *in limine*, Ms. Johnson puts forth her calculation of LLU's Lost Royalty Revenues while referencing her prior background sections discussing the orthodontic market in order to assess the reasonability of

the gross margin data provided by Smarter Alloys. *See* Dkt. 219-1 at 25 ("[G]iven the impact of COVID on 2020 financials (discussed in Section 7.1), utilizing the FY 2020 gross margin for the entire period is likely to understate the gross profits SA earned on the SmartArch Universal archwires."). As a baseline, understanding the general orthodontic market (*e.g.*, as described in Section 7 of her report) provides necessary context for the jury's consideration of the available gross margin data points.

## CONCLUSION

For these reasons, Smarter Alloys' motion to preclude portions of the testimony of Joanne Johnson should be denied in its entirety, with prejudice.

Dated: June 19, 2024

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

By: */s/* Jessica L. Copeland
    Jessica L. Copeland
Avant Building – Suite 900
200 Delaware Avenue
Buffalo, New York 14202
Telephone: (716) 416-7034
jcopeland@bsk.com

Barry Herman (*pro hac vice*)
William Hubbard (*pro hac vice*)
Julie Giardina (*pro hac vice*)
WOMBLE BOND DICKINSON (US) LLP
100 Light Street, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Barry.Herman@wbd-us.com
Will.Hubbard@wbd-us.com
Julie.Giardina@wbd-us.com

Jeffrey Whittle (*pro hac vice*)
Joshua Davis (*pro hac vice*)
WOMBLE BOND DICKINSON (US) LLP
811 Main Street, Suite 3130
Houston, TX, US 77002
Telephone: (346) 998-7801
Jeffrey.Whittle@wbd-us.com
Joshua.P.Davis@wbd-us.com

*Attorneys for Plaintiff Loma Linda University*